Agustina **PEREZ–PEREZ**,
Plaintiff, Appellee,

v.

**POPULAR LEASING RENTAL, INC.,**
**et al., Defendants, Appellants.**

No. 92–1836.

United States Court of Appeals,
First Circuit.

Heard Nov. 5, 1992.

Decided May 25, 1993.

Harry A. Ezratty, San Juan, for appellants.

Arnoldo E. Granados with whom Ortiz Toro & Ortiz Brunet, Hato Rey, PR, was on brief for appellee.

Before TORRUELLA and STAHL, Circuit Judges, and SKINNER,* Senior District Judge.

* Of the District of Massachusetts, sitting by desig-

SKINNER, Senior District Judge.

Plaintiff-appellee Agustina Perez–Perez ("Perez–Perez") brought this action seeking damages for emotional distress sustained as a result of the death of her forty-nine year-old sister, Maria Perez–Perez ("Maria"). Perez–Perez alleged that while defendant-appellant Oscar Betancourt Mateo ("Betancourt") was driving a car leased from defendant-appellant Popular Leasing Rental, Inc. ("Popular"), Betancourt negligently struck and killed Maria on November 27, 1990, as she was walking along the side of Route 849 in Puerto Rico. A jury returned a verdict in Perez–Perez's favor in the amount of $275,000. Betancourt and Popular appeal from the judgment entered on the verdict by the United States district court of Puerto Rico, Judge Fuste, and from an order denying defendants' "Motion For Alternative Relief." Defendants claim that relief from judgment is necessary because (1) the trial testimony was poisoned by perjury, (2) plaintiff's counsel unfairly surprised the defendants by introducing previously undisclosed expert medical testimony concerning Betancourt's eyesight, and (3) the verdict was excessive. Before considering these issues, however, we first address plaintiff's contention that this court lacks appellate jurisdiction because the notice of appeal and the "Motion for Alternative Relief" were untimely filed. We find that we have appellate jurisdiction to consider defendants' direct appeal from the district court judgment, as well as jurisdiction to consider the district court's denial of defendants' post trial motion. Because we find that the district court incorrectly admitted the testimony of the plaintiff's medical expert, we reverse and remand for a new trial.

I. Appellate Jurisdiction

■ Fed.R.App.P. 4(a) requires any party appealing from a judgment of the district court to file a notice of appeal within 30 days of the entry of the judgment. Timely filing of a notice of appeal is "mandatory and jurisdictional." *Browder v. Director, Dept. of Corrections*, 434 U.S. 257, 264, 98 S.Ct. 556, 561, 54 L.Ed.2d 521 (1978). In this case, there is no dispute that the defendants timely filed.

nation.

ly filed a notice of appeal from the district court's order denying the motion for alternative relief. In contrast, the parties dispute whether timely appeal was taken from the district court's judgment entered against defendants on April 22, 1992. A notice of appeal was not filed until June 26, 1992, more than two months later.

 If a motion to alter or amend judgment pursuant to Fed.R.Civ.P. 59 is timely filed with the district court, the time for appeal runs from the entry of the order denying such motion. Fed.R.App.P. 4(a)(4). Defendants invoke the tolling provisions of this rule by describing their "Motion for Alternative Relief" as one timely brought under Rule 59(e). The motion was filed with the district court on April 30, 1992, but not served on Perez–Perez until May 4, 1992. The timeliness of a Rule 59 motion to amend judgment is determined by the date it is served, not by the date it is filed. *Rivera v. M/T Fossarina*, 840 F.2d 152, 154 (1st Cir. 1988). Though it might appear that the motion was not filed within the requisite 10–day period, Fed.R.Civ.P. 6(a) provides that the intermediate Saturdays and Sundays be excluded from the 10–day count. Accordingly, we find that the motion was served on the plaintiff within ten days of the entry of judgment. This, however, does not end our inquiry.

 Our jurisdiction over the appeal from judgment (as opposed to the appeal from the denial of the motion itself) depends on whether we characterize the "Motion For Alternative Relief" as one brought under Rule 59(e) or Fed.R.Civ.P. 60(b). A motion for relief from judgment under Rule 60(b), unlike a motion to amend a judgment under Rule 59(e), does not toll the 30–day appeal period. *Browder*, 434 U.S. at 263 n. 7, 98 S.Ct. at 560 n. 7; *Lopez v. Corporacion Azucarera de Puerto Rico*, 938 F.2d 1510, 1513 (1st Cir.1991). Our inquiry into the character of the motion is a functional one: "nomenclature should not be exalted over substance." *Echevarria–Gonzalez v. Gonzalez–Chapel*, 849 F.2d 24, 26 (1st Cir.1988) (quoting *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 41 (2nd Cir.1982)); 7 Moore's Federal Practice ¶ 60.30[1] (1992). The caption "Motion for Alternative Relief," does not describe a motion under either Rule 59 or Rule 60. One of the claims for relief, remittitur of an excessive verdict, is a classic Rule 59 claim. The other claims, surprise and misconduct, are specifically referred to in Rule 60(b), and the defendants appear to rely on Rule 60(b)(1) in their memorandum to the district court.[1]

Rule 59 provides that a new trial may be granted in a jury action for any reason for which new trials were granted at common law. The rule creates the opportunity to correct a broad panoply of errors, in order to prevent injustice. 11 Wright & Miller, Federal Practice and Procedure: Civil §§ 2803, 2805 (1973). In an early case under Rule 59, the Supreme Court described the breadth of the rule:

> The motion for a new trial may invoke the discretion of the court in so far as it is bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or, *that, for other reasons, the trial was not fair to the party moving;* and may raise questions of law arising out of substantial errors in admission or rejection of evidence or instructions to the jury.

*Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940) (emphasis supplied). It would appear in general that the grounds for relief from judgment under Rule 60(b) may also be grounds for a new trial under Rule 59, if the motion is timely made. 11 Wright & Miller, *supra*, §§ 2805–2810. In *Conway v. Chemical Leaman Tank Lines, Inc.*, 687 F.2d 108,

---

**1.** The district court entered the following order denying the defendants' motion on June 12, 1992:

> This final order will start the counting of the term for appeal by defendants.
> The court now denies [defendants'] April 30 motion for relief against the verdict (JNOV) [sic] and for new trial or remittitur.

IT IS SO ORDERED.
> If the defendants' motion did not in fact qualify as a motion under Rule 59, the district court had no power to extend the time for filing an appeal, which is jurisdictional. *Browder*, 434 U.S. at 264, 98 S.Ct. at 560.

112 (5th Cir.1982), the court held that the grant of a new trial under Rule 59 was warranted when a party called a previously unidentified expert witness to testify without any forewarning, resulting in a favorable verdict for that party. This is precisely one of the instances of misconduct of which the defendants complain in their motion in this case.

The interrelation of Rules 59 and 60 was described by the court in *Van Skiver v. United States,* 952 F.2d 1241 (10th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992), as follows:

> [T]he rules allow a litigant subject to an adverse judgment to file either a motion to alter or amend the judgment under Fed. R.Civ.P. 59(e) or a motion seeking relief from judgment pursuant to Fed.R.Civ.P. 60(b). These two rules are distinct; they serve different purposes and produce different consequences. Which rule applies to a motion depends essentially on the time a motion is served. If a motion is served within ten days of the rendition of judgment, the motion will ordinarily fall under Rule 59(e). If the motion is served after that time it falls under Rule 60(b).

*Van Skiver,* 952 F.2d at 1243 (citations omitted). In other words, the litigant who gets his motion in on time enjoys the full menu of grounds for relief provided by Rule 59; if not, he is confined to the six specific grounds of relief found in Rule 60(b).

It is not quite that simple, however, because of additional restraints which the courts have imposed on motions brought under each rule. Motions under Rule 59 must raise matters that were brought to the attention of the district judge during the trial, unless the alleged error was fundamental. 11 Wright & Miller, *supra,* § 2805; *Harley–Davidson Motor Co. v. Bank of New England–Old Colony, N.A.,* 897 F.2d 611, 616 (1st Cir.1990). Conversely, motions under Rule 60(b) must raise issues which were not available to the moving party within the appeal period, barring exceptional circumstances. *Silk v. Sandoval,* 435 F.2d 1266 (1st Cir.), *cert. denied,* 402 U.S. 1012, 91 S.Ct.

2189, 29 L.Ed.2d 435 (1971); *Mitchell v. Hobbs,* 951 F.2d 417 (1st Cir.1991). The relatively open ended time limits of Rule 60(b) can not be used to circumvent the time limitations on appeal.

A further question is raised by our opinion in *Echevarria–Gonzalez v. Gonzalez–Chapel,* in which we held that a motion which invoked Rule 60(b) and relied on the rhetoric of Rule 60(b) to support it, would not be construed as a motion under Rule 59 for purposes of tolling the appeal period, even though filed within ten days of the judgment, as required by Rule 59. *Echevarria,* 849 F.2d at 26. The critical fact in *Echevarria,* however, was that the motion sought relief from a default judgment. Under Fed.R.Civ.P. 55, the only means of setting aside a default judgment is by motion under Rule 60(b); the motion was either a Rule 60(b) or nothing.

A more general rule is exemplified by our opinion in *Lopez v. Corporacion,* in which we held that a timely filed motion could be treated as filed under Rule 59 even though it was titled "Motion for Relief From Judgment" and ostensibly filed pursuant to Rule 60(b). *Lopez,* 938 F.2d at 1513. We quoted with approval the statement in a leading text:

> [A] motion, though characterized as one under Rule 60(b), which is filed within ten days of the entry of judgment and questions the correctness of the judgment, will be considered a functional Rule 59 motion and will postpone the time to appeal until entry of the order disposing of it.

*Id.* at 1513–14 (quoting 9 Moore's Federal Practice ¶ 204.12[1] ). We distinguished *Echevarria* on the ground that the movant in *Echevarria* sought relief from a default judgment and relied on cases construing Rule 60(b), and neither was true of the motion in *Lopez. Id.* at 1514.

In our present case, the defendants have not characterized their motion one way or the other. In the supporting memorandum filed in the district court, the only rule reference is to Rule 60(b), but is a casual, rather than an exclusive, one.[2] They have, however,

**2.** "Defendants contend—among other things— that a certain happening at trial constituted conduct violative of Rule 60(b)(3) of the Federal

Rules of Civil Procedure, thus paving the way for relief from judgment. In the same vein the con-

relied heavily on a case decided under Rule 60(b), *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 924 (1st Cir.1988). But as we hold *infra*, the propositions for which that case is cited is equally applicable to a timely filed motion under Rule 59.

We find the state of the record in this case to be closer to *Lopez* than to *Echevarria*, which we view as specifically exemplary of the special rule affecting default judgments. Accordingly, we rule that the defendants' motion, having been filed within the ten-day period as computed under Rule 6(a), may be construed as a motion under Rule 59, the filing of which postpones the time for filing an appeal until 30 days after the motion's determination. The subsequent timely filing of the appeal established our appellate jurisdiction.

## II. Grounds for the Motion

■ Defendants' motion argued two grounds for setting aside the jury verdict. First, defendants alleged the trial was a fraud on the court, claiming that a witness offered perjured testimony with the assistance of opposing counsel. Second, defendants argued they were unfairly surprised at trial because the court allowed the plaintiff to offer the testimony of a previously undisclosed medical expert. Ordering the presentation of witnesses and the granting of a new trial are both matters committed to the discretion of the trial court, and may be reversed only for abuse of discretion. *See* Fed.R.Evid. 611; *CVD, Inc. v. Raytheon Co.*, 769 F.2d 842, 848 (1st Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 312 (1986).

## A. Fraud on the Court

■ Defendants must clear a high hurdle in order to set aside the verdict based on their allegations of fraud. The moving party must demonstrate fraud by clear and convincing evidence and must show that the fraud foreclosed full and fair preparation or presentation of its case. We have explained that fraud on the court occurs,

> where it can be demonstrated, clearly and convincingly, that a party has sentiently

duct complained of, in addition to other conduct,

set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.

*Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir.1989).

■ When considered against these standards, it is clear to us that the district court properly denied so much of defendants' motion as was based on speculative and unsubstantiated allegations of perjury. Defendants' argument centers on the trial testimony given by Luis Rafael Villanueva Gaetan ("Rafi"), the only eye witness to the accident. During trial, Rafi testified that as he was walking down Route 849 he passed Maria, who was standing on the shoulder of the road. A short time later he heard a "blow" and turned to see Maria's body falling to the ground. Rafi explained that Betancourt's car was passing just in front of Maria's location at the time her body was falling to the pavement. After the car stopped a short distance down the road, Rafi said that he ran to the car and informed the driver, who was then inspecting the front of his car, that he had struck a pedestrian. According to Rafi, the driver looked in the direction of Maria's body, then returned to his car and drove off. Rafi identified Betancourt as the driver of the car.

On cross-examination, Rafi admitted that some of the detail of his trial testimony was absent from two prior sworn statements given by him. Defense counsel highlighted two significant additions to Rafi's initial sworn statements. First, while Rafi testified at trial that he saw Maria's body *falling to* the pavement, his prior statements implied that her body was *already on* the pavement by the time he turned towards the sound of the blow. Second, his trial testimony placed Betancourt's car just in front of Maria at the time of the blow, while his initial statements do not mention the precise location of the car, other than the fact that it came to a stop down the road. Taking these inconsistencies and adding to them Rafi's admission that he

ran afoul of section (b)(1) of the same Rule."

had visited opposing counsel's office to prepare his trial testimony, defendants charge that opposing counsel and Rafi conspired to present perjured testimony.

The judge properly concluded that defendants failed to present clear and convincing evidence that Rafi committed perjury or that opposing counsel encouraged, secured, or knowingly assisted the allegedly perjured testimony. We note that one purpose of cross-examination is to give counsel the opportunity to root out the type of inconsistencies, omissions, and exaggerations alleged here. On cross-examination, defendants raised before the jury the same facts that are now alleged on appeal to constitute fraud on the court. The significance of the inconsistencies in Rafi's testimony, as well as his credibility and sincerity, was for the jury to decide and we see no reason to disturb its findings or the district court's order denying relief from the verdict on this ground.

B. Undisclosed expert testimony

■ Defendants also seek a new trial because the district court abused its discretion when it permitted the plaintiff to introduce the testimony of a previously undisclosed medical expert, Dr. Walter Kleis, who testified that Betancourt's eyesight was severely impaired by glaucoma. Dr. Kleis testified that Betancourt's visual impairment was so severe that it could cause him to miss a pedestrian walking along the road under conditions similar to those on the evening of the accident.

Up to the time of Dr. Kleis' testimony, plaintiff had pursued the case under the theory that Betancourt was driving with "utter disrespect toward human life" and that "the accident was due only and exclusively to the negligence of defendants [sic] for not driving safely." Plaintiff reaffirmed this as the exclusive theory of the case in the initial pretrial order and two amended pretrial orders. At no time did plaintiff suggest that Betancourt's eyesight would be raised as an issue at trial, nor did plaintiff identify any medical experts who were to be called at trial. Plaintiff, nonetheless, argued to the district court that Dr. Kleis' testimony should be permitted as "rebuttal" evidence to address an issue raised by Betancourt's direct examination. Betancourt's entire direct testimony on the issue follows:

Q Now, I note that you wear glasses.
A Yes.
Q Would you tell us, please, what the purpose of those glasses are [sic].
A The purpose of the glasses is to improve my vision to make it better. But I can drive without glasses. I can see without glasses if I want to.

Plaintiff's counsel made Betancourt's eyesight a central issue on cross-examination (more than a third of the record testimony is devoted to cross-examination on this issue). Counsel's examination explored the physical condition of Betancourt's eyes, namely the presence of glaucoma; his ongoing medical treatment for this condition, including daily use of eye drops and recent laser treatment of one eye; and the effect of this condition and these treatments on his peripheral vision, his ability to distinguish objects at a distance, and his ability to see in the dark.

During Betancourt's cross-examination, plaintiff asked the court for permission to present Dr. Kleis as a rebuttal witness. Counsel stated that Dr. Kleis would testify that based on his review of Betancourt's medical records, Betancourt suffered from "all kinds of problems in terms of centralized and focusing vision," particularly after sunset, and that he should not have been driving a car at night. The court initially denied plaintiff's request, reasoning that the pretrial order made no mention of a medical expert and that the proffered testimony raised an entirely new and inconsistent theory of the case. The judge later decided to hear the testimony of Dr. Kleis outside the presence of the jury. At that time, the court learned that plaintiff's counsel had first contacted Dr. Kleis around the beginning of January 1992 at which time counsel told Dr. Kleis that it was likely that he would testify at trial. Plaintiff made no similar representation to the court or to defense counsel at any time prior to trial in April 1992, despite twice seeking to amend the pretrial order to reflect changes in witnesses and other evidence. The court addressed plaintiff's counsel, concluding that he would permit Dr. Kleis to

testify before the jury "as an act of justice to your client, not to you. You did wrong."

Dr. Kleis testified for the jury that Betancourt suffered from glaucoma, a medical condition of the eyes that reduces an individual's peripheral vision, especially at night. He stated that the eye drops used to treat Betancourt's glaucoma made his pupils very small, which further reduced his visual capacity. In addition, he testified that Betancourt suffered from myopia, a condition that impaired his ability to see objects at a distance. Dr. Kleis explained that taken together, these conditions would make it difficult for Betancourt to see and perceive objects at the periphery of his vision. Responding to a hypothetical question, Dr. Kleis concluded that under the lighting and driving conditions on the night of the accident there was a possibility that Betancourt did not see the victim on the side of the road. Finally, Dr. Kleis testified that Betancourt had undergone laser surgery on his left eye shortly after the accident.

In this case, the trial court's own findings compel the conclusion that the defendant was unfairly surprised and that plaintiff's counsel engaged in misconduct. Though we believe that the judge abused his discretion with regard to his ultimate decision to admit Dr. Kleis' testimony, his initial reaction was correct and we defer to the judge's well-considered findings of fact. The judge made several germane findings on the record. The judge concluded that (1) Dr. Kleis' testimony was not proper rebuttal evidence of an issue put into dispute on direct examination;[3] (2) plaintiff's counsel "knew for a long time" that Betancourt suffered from glaucoma and that "at least since January [ ] had Dr. Kleis available to testify;" (3) there was "no excuse as to why [counsel] kept [Dr. Kleis' testimony] under [his] sleeve until this moment;" and (4) the proffered testimony changed the theory of the case from a charge that Betancourt drove recklessly to an allegation that Betancourt was "driving like normal people do, and that because of an eyesight problem he had the accident." In spite of these findings, the judge ultimately decided to admit Dr. Kleis' testimony as an "act of justice" to the plaintiff, noting that the situation was totally beyond plaintiff's control.[4]

In this case, Dr. Kleis' testimony and counsel's extensive cross-examination of Betancourt on his visual impairment, introduced a novel theory of liability to this case. Defense counsel was denied the opportunity to design an intelligent litigation strategy to address the charge of visual impairment and to effectively cross-examine Dr. Kleis in a highly specialized field of medicine. Without time to review Dr. Kleis' records or to gain sufficient medical knowledge and without a chance to investigate Betancourt's physical condition, speak to his primary care physician, or arrange for a rebuttal expert, defense counsel was precluded from effectively addressing the charge.

We have no doubt that this state of the record exactly comports with the definition of unfair surprise succinctly set out by the Court of Appeals of the Fifth Circuit:

> It is well settled that Rule 59 provides a means of relief in cases in which a party has been unfairly made the victim of surprise. The surprise, however, must be "inconsistent with substantial justice" in order to justify a grant of a new trial. The district court is therefore entitled to grant a new trial only if the admission of the surprise testimony actually prejudiced the [moving party's] case. This Court has limited reversible error from unfair surprise to situations where a completely new issue is suddenly raised or a previously unidentified expert witness is suddenly called to testify.

3. Plaintiff contends that Dr. Kleis' testimony was admissible under the terms of the pretrial order which expressly reserved to the parties a right to call undisclosed rebuttal witness. The judge determined that Dr. Kleis was *not* a proper rebuttal witness. This determination is within the sound discretion of the trial judge, *Lubanski v. Coleco Indus., Inc.*, 929 F.2d 42, 47 (1st Cir.1991), and we are in full agreement with it.

4. We are aware of the difficulty of excluding highly relevant and perhaps dispositive testimony which apparent substantive justice requires should be considered by the jury. Apparent substantive justice may be illusory, however, if the purportedly dispositive evidence is not subject to fair testing in an even handed process.

*Conway v. Chemical Leaman Tank Lines, Inc.*, 687 F.2d at 111–12 (footnote and citations omitted). Furthermore, the district judge made a specific finding that plaintiff's counsel had been guilty of misconduct. On the facts of this case, the criteria for misconduct which we imposed under Rule 60(b) in *Anderson v. Cryovac*, 862 F.2d at 923–26, apply equally to this motion under Rule 59. Reversal of the judgment and a remand for a new trial is warranted under either analysis.

We need not address defendants' claim that the jury award was excessive, since in any case there must be a new trial. The judgment is *reversed* and the case *remanded* to the district court for a new trial.

Costs awarded to appellants.