Jessica **SPURLOCK, a Minor, by Next Friend and Legal Guardian, Lisa LOCKAMY, Plaintiff,**

v.

**J. Larry LAWSON, et al., Defendants.**

No. J–C–92–226.

United States District Court,
E.D.Arkansas,
Jonesboro Division.

Feb. 9, 1995.

Order Denying Motion for Suspension
of New Trial Order and for Permission
to File for Reconsideration
March 22, 1995.

George Michael DeLoache, Jonesboro, AR and Joe Bednarz, Nashville, TN, for plaintiff.

Paul D. McNeill, Jonesboro, AR and Laura Hensley Smith of Little Rock, AR, for defendants.

## MEMORANDUM AND ORDER

SUSAN WEBBER WRIGHT, District Judge.

This medical malpractice case was tried to a jury in Jonesboro, Arkansas on November 14–17 and 21–22, 1994. Plaintiff's mother, Lisa Lockamy, was approximately six months pregnant when she suffered from cholecystitis and had a cholecystectomy and incidental appendectomy on December 8, 1986. Less than two weeks later, Plaintiff was born at Arkansas Methodist Hospital in Paragould, Arkansas. Plaintiff suffers from cerebral palsy which Lisa Lockamy contends was caused by Plaintiff's premature birth. Plaintiff alleged that separate defendant Dr. Larry Lawson should not have performed, and was negligent in performing, the surgery and that his negligence proximately caused the premature delivery and the cerebral palsy. She further contended that after the surgery and before the delivery the other defendants mismanaged Lockamy's care.

Just prior to trial, Plaintiff settled with all the defendant doctors except Lawson, and a voluntary non-suit was granted as to Defendant St. Paul Fire and Marine Insurance Company, the insurer of Arkansas Methodist Hospital. The jury returned a verdict for Lawson. Now before the Court is Plaintiff's Motion for New Trial to which Defendant Lawson has responded and Plaintiff has replied. For the reasons stated below, the Court grants Plaintiff's motion. This order is being written without benefit of a transcript of any of the proceedings.

## I.

The Eighth Circuit Court of Appeals addressed the standards governing a ruling on a motion for a new trial:

'On such a motion it is the duty of the judge to set aside the verdict and grant a new trial, if he is of opinion that the verdict is against the clear weight of the evidence, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'

*Altrichter v. Shell Oil Company,* 263 F.2d 377, 380 (8th Cir.1959) (citation omitted).

The Eight Circuit further explained that the standard for granting a new trial is not the same as that for granting a motion for judgment notwithstanding the verdict:

'Rule 59 gives the trial judge ample power to prevent what he considers to be a miscarriage of justice. It is his right, and indeed his duty, to order a new trial if he deems it in the interest of justice to do so.... When the court is passing on a motion for judgment notwithstanding the verdict, it is bound to accept as true the evidence favorable to the verdict, even though there may be strong testimony to the contrary, but the court is not so hobbled in considering whether to order a new trial, and may rely on its own judgment as to the weight of the evidence. The motion invokes the sound discretion of the court, and is not reviewable, if at all, save for clear abuse of discretion.'

*Id.* at 381 (citation omitted). The Court has greater discretion because the grant or denial of a new trial does not deprive parties of a jury determination and thus is viewed with less scrutiny on appeal. *Birchfield v. International Harvester Co.,* 726 F.2d 1131, 1132 n. 1 (6th Cir.1984).

## II.

Plaintiff asserts four grounds in support of her Motion for a New Trial: misconduct on the part of defense counsel, Laura Hensley Smith of the Friday, Eldredge, and Clark

law firm;[1] surprise because of major changes in the opinions of Dr. Gerald Quirk and Dr. Greg Sharp, two of Defendant's expert witnesses; error in allowing Dr. Sharp to testify; and the verdict was against the weight of the evidence. The Court finds convincing Plaintiff's argument that she is entitled to a new trial because of undisclosed changes in the testimony of Defendant Lawson's experts. The Court will comment only to a limited extent on the issue of misconduct of counsel in this Order. As noted below, the Court will reconsider Plaintiff's motion to exclude the testimony of Dr. Sharp.

In support of her assertion that Drs. Quirk and Sharp changed their opinions in their testimony, Plaintiff attaches as exhibits to her motion excerpts from their depositions as well as the deposition and report of another expert, Dr. Naeye. Defendant is incorrect in his assertion that in considering a motion for a new trial, the Court is limited to matters which were part of the record. Rule 43(e) of the Federal Rules of Civil Procedure provides that when a motion is based upon evidence not appearing of record, the court may hear the matter on affidavits. *See* 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 2416 (1995) (court may rely on affidavits on a motion for a new trial).

At the time of trial, the Court did not have before it the depositions of Drs. Quirk, Sharp and Naeye and had no independent knowledge of their contents. The Court made a conscientious effort to conduct a fair trial. The Court assumed, erroneously, that defense counsel had conducted its part of the case in accordance with the intent of the Federal Rules of Civil Procedure governing discovery. These rules contemplate that each side will understand the opposing side's theory of the case and allow opportunity for each side to rebut the opposing side's anticipated evidence. As the court stated in *Brown Badgett, Inc. v. Jennings,* 842 F.2d 899 (6th Cir.1988), the goal of the rules is to 'make a trial less a game of blind man's bluff and more a fair contest with the basic

issues and facts disclosed to the fullest practicable extent.' The purposes underlying the federal rules are to avoid surprise and the possible miscarriage of justice and to eliminate the 'sporting theory of justice.' 842 F.2d at 902 (citations omitted). *See also Greyhound Lines, Inc. v. Miller,* 402 F.2d 134 (8th Cir.1968) (purpose of discovery is to narrow the issues, to eliminate surprise, and to achieve substantial justice). But in this case, as a result of the defendant's experts' testimony, the plaintiff was surprised and had no chance to prepare adequately for the altered opinion testimony of Drs. Quirk and Sharp.

The Court finds that the failure of defense expert, Dr. Quirk, to supplement his deposition after he changed his opinion was unfair and contrary to the purpose and intent of the rules of civil procedure, as well as contrary to Dr. Quirk's own commitment to notify the Plaintiff should he change his opinion. His opinion testimony at trial was materially different from his deposition testimony in at least two significant respects, one relating to the issue of amnionitis and the other relating to whether Lisa Lockamy suffered from an infection that ascended into her womb.

The Defendant points out, and the Plaintiff admits, that Plaintiff's counsel failed to object to Dr. Quirk's testimony at the time. Such an objection would have been permissible for impeachment purposes. However, it would have done nothing to cure the element of surprise. Any objection by the Plaintiff would not have enabled the Plaintiff to rebut Dr. Quirk's unannounced change in his opinion. In addition, courts have held that even though the moving party failed to object, a new trial may be justified. *See San Antonio v. Timko,* 368 F.2d 983 (2d Cir.1966) (where impropriety of an argument is so flagrant as to constitute fundamental error, error will be considered on appeal even though the point was not raised at trial, particularly when combined with previous improprieties in summation and exceedingly thin character of evidence); *Brownlee v. United Fidelity Life*

---

1. Prior to trial, Smith was counsel for St. Paul Fire and Marine Insurance Company. After her client was voluntarily dismissed, Smith assisted in the defense of Dr. Lawson, who also was insured by St. Paul.

*Insurance Co.,* 117 F.R.D. 383 (S.D.Miss. 1987), *aff'd,* 854 F.2d 1319 (5th Cir.1988) (even where no objections were made, when defendant's right to a fair trial has been prejudiced, the error must be corrected and a new trial provided). *See also* 6A Moore's Federal Practice ¶ 59.08[2] (Cum.Supp.1994–95) (if a party fails to object to the evidence, a new trial is justified only if admission of evidence results in prejudicial surprise and is inconsistent with substantial justice).

The fact that Dr. Quirk was originally listed as a witness for another defendant in this case does not give this Defendant license to use his trial testimony in such a way as to surprise the Plaintiff with unannounced, material changes in his opinion.[2] Plaintiff had the right to expect that Dr. Quirk would not change his opinion.

Similarly, the trial testimony of Dr. Sharp presents the element of surprise. The Court had ruled, over Plaintiff's objections, that Dr. Sharp could testify about possible causes of cerebral palsy. This ruling did not in any way indicate that Dr. Sharp would be allowed to testify as to causes that had not been listed in his deposition. The Plaintiff had a right to know what Dr. Sharp's testimony would be in order to prepare for trial. In *Perez–Perez v. Popular Leasing Rental, Inc.,* 993 F.2d 281 (1st Cir.1993), the court explained that fraud on the court must be demonstrated by clear and convincing evidence. While in *Perez–Perez* the defendant/appellant failed to show fraud on the court, judgment was reversed on the basis of surprise and misconduct. There, the court held that the admission of undisclosed medical expert testimony which introduced a new theory of liability precluded appellant from effectively addressing the charge. *See also Holiday Inns, Inc. v. Robertshaw Controls Co.,* 560 F.2d 856 (7th Cir.1977) (exclusion of evidence of plaintiff's alternative theory of recovery was held proper where plaintiff failed to supplement answers to include the alternative theory, and where plaintiff's expert never mentioned the theory at deposition nor supplemented the answer to include

the theory); *Sturm v. Clark Equipment Co.,* 547 F.Supp. 144 (W.D.Mo.1982), *aff'd,* 732 F.2d 161 (8th Cir.1984) (fact that defendant's witness had been questioned during deposition about a lock-out system for hydraulic booms did not provide notice to defendant that plaintiff had developed and would be relying on a defect theory related to these systems; if plaintiff were serious about the issue, it should have disclosed such theory in pretrial rather than presenting a belated theory at trial). Again, an objection during the testimony would not have enabled Plaintiff to avoid surprise.

In a related vein, the Court recalls defense counsel Laura Hensley Smith stating at the pretrial conference that evidence that Lisa Lockamy was unwed when she gave birth to the Plaintiff should be admitted because there is a greater incidence of cerebral palsy or premature births in children of such mothers. The Court therefore ruled that Defendant could use the term "single mother" when referring to Plaintiff's mother. Even though this pretrial discussion gave her the opportunity, Smith never indicated to the Court or to Plaintiff's counsel that she intended to show through Dr. Sharp's testimony that "shaken baby syndrome" can be a cause of cerebral palsy and that "shaken baby syndrome" would be argued in closing argument. The fact that Smith used this in closing compounds the unfairness to the Plaintiff that resulted from this unexpected testimony from Dr. Sharp.

The Plaintiff may renew her motion to exclude Dr. Sharp's testimony upon a new trial. The Court will reconsider the issue of whether Dr. Sharp should be permitted to testify concerning his opinion of possible causes of the Plaintiff's cerebral palsy. If the Defendant plans to use Dr. Sharp or any other expert whose testimony will be similar to that of Dr. Sharp, the Defendant should tender to the Court a copy of that witness's deposition or affidavit so that the Court may be thoroughly informed in advance of ruling on whether the testimony will be allowed at trial.

**2.** Defendant Lawson listed Drs. Quirk and Sharp as witnesses in his pretrial conference information sheet. He also listed them, indirectly, in the exchange in witness lists done earlier in pretrial discovery.

Defendant argues that the disputed expert testimony concerns only the element of causation and that there is substantial evidence in the record to establish that the Defendant did not violate the standard of care, which is sufficient to sustain the verdict. However, the record also contains substantial evidence that the Defendant violated the standard of care. As Defendant points out, the Court may not inquire as to the basis for the verdict. However, the Court is mindful that from the evidence the jury could have found that the standard of care was violated but that Dr. Lawson's negligence was not the proximate cause of Plaintiff's condition.

## III.

Because of the unfairness that the Plaintiff has suffered as a result of the aforementioned surprise, the Plaintiff may take new depositions of Drs. Quirk and Sharp to prepare for the new trial. The former depositions, as well as the trial testimony from the first trial, may be used by Plaintiff for impeachment purposes of these witnesses. It might be appropriate for Plaintiff's counsel to file a motion pursuant to Fed.R.Civ.P. 37 to recover the expenses of these new depositions.

## IV.

The Court concludes that the testimony of the Defendants' experts Quirk and Sharp, coupled with Defendant's closing argument, constitutes a miscarriage of justice. Therefore the Plaintiff's motion for a new trial is granted. The verdict for the Defendant Larry Lawson, M.D. will be set aside. The Court will entertain a motion for sanctions under Rule 37.

SO ORDERED.

## ORDER ON MOTIONS

■ Now before the Court is Defendant Larry Lawson's Motion for Suspension of Order and for Permission to File Motion for Reconsideration to which Plaintiff has responded and Defendant Lawson has replied. Upon careful consideration, the Court finds that the motion should be denied.

The Court granted Plaintiff's Motion for New Trial on the grounds that there were undisclosed changes in the testimony of two of Dr. Lawson's expert witnesses, Drs. Sharp and Quirk. The Court found that Dr. Sharp's trial testimony presented an element of surprise that resulted in a miscarriage of justice. Specifically, Dr. Sharp's deposition testimony showed he did not mention "shaken baby syndrome" as a possible cause of Jessica Spurlock's cerebral palsy. The Plaintiff argued, and the Court agreed, based upon her recollection of the trial testimony, that Defendant Lawson testified at trial that Jessica could have suffered brain injury as a result of being shaken. The Court further found that Dr. Quirk's trial testimony was materially different from his deposition testimony in two significant respects.

Defendant Lawson now asks the Court to suspend its Order granting a new trial and allow him to file a motion for reconsideration after certain portions of trial testimony have been transcribed. Defendant Lawson contends that with the benefit of the actual record he will be able to demonstrate that his experts' trial testimony was not precluded by their deposition testimony and that his defense as to causation was not or should not have been a surprise to Plaintiff.

The Court has reviewed the transcript of trial testimony of Dr. Sharp, which is the only portion of the transcript now available, and concludes that the Court's recollection of what Dr. Sharp said at trial is correct. While Dr. Sharp did mention during his deposition "trauma" in connection with a discussion of gall bladder surgery that Lisa Lockamy underwent when she was six months pregnant with Jessica (see Sharp Dep. at 19, 28–29), Dr. Sharp did not mention as possible causes of brain damage and resultant cerebral palsy the "kind of trauma or abuse" that might result from a child being "shaken or injured in that way." Sharp Tr. at 44. He said nothing at his deposition about "shaken baby syndrome ... where an adult, typically a parent, shakes the baby to get them to stop crying or whatever ... and that produces damages to the brain," where the "baby's brain gets kind of literally

sloshed around within the cranial cavity . . ." Sharp Tr. at 46.

The Court acknowledges that Plaintiff was not surprised by trial testimony that Jessica was not in Lisa Lockamy's care for a period of time; both Lisa and her mother testified Jessica was with her father for a while. This testimony is not inconsistent with the theory that something traumatic could have happened to Jessica during that time to cause her brain injury. However, the Plaintiff was surprised by Dr. Sharp's new theory that Jessica's brain damage could have occurred as a result of being shaken by some adult. The difference between Dr. Sharp's opinions as to the causes of cerebral palsy as stated at his deposition and the introduction of "shaken baby syndrome" is sufficient to satisfy the Court that the resulting surprise to Plaintiff resulted in a miscarriage of justice. It is unnecessary to examine trial testimony of other witnesses in order to uphold the prior Order.

IT IS THEREFORE ORDERED that the Court's prior Order remains in effect. Defendant's motion is denied.

SO ORDERED.