UNIVERSAL INSURANCE COMPANY, et al., Plaintiffs,

v.

DEPARTMENT OF JUSTICE, et al., Defendant.

Civil No. 11–1968 (FAB).

United States District Court, D. Puerto Rico.

Feb. 23, 2012.

Opinion on Reconsideration in Part June 22, 2012.

Osvaldo Carlo–Linares, Lydia M. Ramos–Cruz, Lausell & Carlo, PSC Penthouse, Roberto L. Prats–Palerm, RPP Law PSC, San Juan, PR, for Plaintiffs.

Christian E. Pagan–Cordoliani, Puerto Rico Department of Justice, Vanessa D. Bonano–Rodriguez, Department of Justice Commonwealth of Puerto Rico, San Juan, PR, for Defendant.

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court is the motion to dismiss filed by defendants Commonwealth of Puerto Rico, the Department of Justice of the Commonwealth of Puerto Rico, and, in his official capacity as Attorney General, Guillermo Somoza–Colombani (collectively, "defendants"). (Docket No. 48.) For the reasons set forth below, defendants' motion to dismiss is **DENIED** in part and **GRANTED** in part.

## DISCUSSION

### I. Background

On July 12, 2011, the Commonwealth of Puerto Rico Legislative Assembly ("the legislature") passed Public Law No. 119, known as the Uniform Seizure and Forfeiture Act of 2011 ("Law 119"). Law 119 establishes the rules that govern all asset forfeiture procedures in Puerto Rico. (Docket No. 26–1 at p. 1.) Law 119 repealed Public Law No. 93 of 1988 ("Law 93"), which "granted certain Commonwealth instrumentalities the authority to seize assets used for illegal purposes." *Id.* According to the Puerto Rico legislature, the main reason for enacting Law 119 is that "multiple amendments and judicial constructions ... have caused confusion in the implementation of [Law 93]." *Id.* Therefore, Law 119 was passed allegedly to "clarif[y] the requirements that each person must meet to challenge a seizure." *Id.* Notably, Law 119 changes the requirements for who can challenge a forfeiture. *Id.* Specifically, Article 15 of Law 119 provides that "persons notified as provided in this Act and who demonstrate they are the *owners* of the property" may challenge the seizure (emphasis added). (Docket No. 26–1 at p. 7.) An owner is "the individual who exercised dominion and control over the property in question before it was seized." *Id.* at p. 2. Article 16 then states that:

> "the plaintiff [who challenges a seizure] shall have the right to furnish a guaranty in favor of the Commonwealth of Puerto Rico ... for the sum of the appraisal of the seized property within twenty (20) days after the complaint challenging the seizure is filed." *Id.* at p. 7–8.

Law 119 also allows insurance companies to challenge automobile seizures, but only on behalf of the owners. Specifically, Article 16 states that:

> "In the case of motor vehicles whose insurance policy includes a seizure endorsement, the insurance company may only file a complaint challenging the seizure *on behalf of the owner of the vehicle,* for which it shall have to furnish the guaranty provided in this article (emphasis added). *Id.* at p. 8.

Plaintiffs Universal Insurance Company, MAPFRE PRAICO Insurance Compa-

ny, and Cooperativa de Seguros Multiples de Puerto Rico (collectively, "plaintiffs") are licensed by the Office of the Insurance Commissioner to operate as insurance carriers in Puerto Rico. (Docket No. 53 at p. 1.) Plaintiffs provide insurance coverage to banks and other financial institutions that finance the purchase of automobiles. (Docket No. 10 at ¶ 14.) Most vehicles purchased in Puerto Rico are financed; some vehicles are leased. (Docket No. 53 at p. 1.) When a financial institution finances a vehicle, it may register its lien on the license and title of the vehicle with the Department of Transportation and Public Works. *Id.* Financial institutions may require an insurance policy to finance vehicles. Plaintiffs state that they issue those insurance policies to cover a number of risks, including asset forfeiture. (Docket No. 10 at ¶¶ 9–11, 15.) They also assert that when an insured vehicle is seized and then forfeited to the Puerto Rico government, plaintiffs will pay the financial institutions pursuant to their insurance contracts. *Id.* at ¶ 16. Then, plaintiffs allegedly have the right to subrogation where "the insurer is placed in the same legal position as the bank or financial institution that financed the vehicle and is entitled to recover the balance owed to the bank by the proprietor." *Id.*

On September 30, 2011, plaintiffs filed a complaint for declaratory judgment and permanent injunction. (Docket No. 1.) On October 25, 2011, plaintiffs filed a verified amended complaint against all defendants. (Docket No. 10.) In their amended complaint, plaintiffs seek a declaratory judgment to declare Law 119 unconstitutional. *Id.* at ¶¶ 38 and 49. Plaintiffs argue that Law 119 prevents them from exercising their right to subrogation pursuant to their insurance policies with the financial institutions and thus, that Law 119 removes their right to challenge automobile seizures. *Id.* at ¶ 36. Plaintiffs request that defendants

be permanently enjoined from enforcing Law 119 because Law 119 violates rights guaranteed by the United States Constitution. *Id.* at ¶ 66. They assert that Law 119 violates the Takings Clause and Due Process under the Fifth and Fourteenth Amendments, and the Ex Post Facto and the Contract Clauses under Article I Section 10 of the United States Constitution. *Id.* at ¶¶ 38 and 49.

On November 22, 2011, defendants filed a motion to dismiss, (*See* Docket No. 48), alleging that under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") plaintiffs fail to state a claim upon which relief can be granted. Defendants argue that plaintiffs 1) have no property interest in the forfeited vehicles and no injury—economic or otherwise—and therefore, have no standing to challenge the constitutionality of the statute, 2) fail to state a claim under the Takings Clause, 3) fail to state a claim for a Due Process violation, 4) fail to state a claim under the Ex Post Facto Clause, and 5) fail to state a claim under the Contract Clause. *Id.* The Court will consider each argument in turn.

On November 25, 2011, plaintiffs filed an opposition to defendants' motion to dismiss. (*See* Docket No. 52.) Plaintiffs argue that defendants "misinterpret" plaintiffs' arguments regarding the Takings Clause and Due Process, *id.* at p. 2 and 8, and re-assert that they have stated a claim for an Ex Post Facto Clause violation and for a Contract Clause violation, *id.* at p. 9.

## II. Rule 12(b)(6) Motion to Dismiss Standard

Rule 12(b)(6) allows the Court to dismiss a complaint when it fails to state a claim upon which relief can be granted. When considering a motion under Rule 12(b)(6), a "court must view the facts contained in the pleadings in the light most favorable to

the nonmovant and draw all reasonable inferences therefrom ...." *R.G. Fin. Corp. v. Vergara–Nunez,* 446 F.3d 178, 182 (1st Cir.2006). "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." *Ocasio–Hernandez v. Fortuño–Burset,* 640 F.3d 1, 11 (1st Cir.2011). When faced with a motion to dismiss, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Id.* at 12 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009)). Any "[n]on-conclusory factual allegations in the complaint [,however,] must ... be treated as true, even if seemingly incredible." *Id.* (citing *Iqbal,* 129 S.Ct. at 1951). Where those factual allegations "'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." *Id.* (quoting *Iqbal,* 129 S.Ct. at 1949). Furthermore, a court may not "attempt to forecast a plaintiff's likelihood of success on the merits; 'a well-pleaded complaint may proceed even if ... a recovery is very remote and unlikely'." *Id.* at 13 (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The relevant inquiry, therefore, "focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Id.* at 13.

According to Rule 12(b)(6), a court will base its determination solely on the material submitted as part of the complaint or central to it. *Fudge v. Penthouse Int'l Ltd.,* 840 F.2d 1012, 1015 (1st Cir.1988).

Generally, "a court may not consider documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001). "When ... a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), [however,] that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." [1] *Beddall v. State St. Bank & Trust Co.,* 137 F.3d 12, 17 (1st Cir.1998) (internal citation omitted). This is especially true where the plaintiff has "actual notice ... and has relied upon these documents in framing the complaint." *Watterson v. Page,* 987 F.2d 1, 4 (1st Cir.1993).

## III. Standing

■■■ The Court must first address defendants' contention that plaintiffs lack standing to challenge the constitutionality of Law 119. "Article III of the United States Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.' " *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State,* 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). A crucial part of the case and controversy limitation on the power of federal courts is the requirement that a plaintiff must have standing to invoke federal jurisdiction. *Id.* at 471–73, 102 S.Ct. 752. "[S]tanding is a threshold issue" and determines "whether the court has the power to hear the case,

---

**1.** In their opposition to motion to dismiss, plaintiffs stated that they "hereby adopt by reference the arguments included in their 'Reply to Response to Motion for Preliminary Injunction,' at docket number 30." (Docket No. 52 at p. 1.) The Court, however, has decided not to convert defendants' motion to dismiss into one for summary judgment. Therefore, the Court will not consider any arguments or facts outside of the complaint or any documents not expressly incorporated into it.

and whether the putative plaintiff is entitled to have the court decide the merits of the case." *Libertad v. Welch*, 53 F.3d 428, 436 (1st Cir.1995) (internal citation omitted). Therefore, if a plaintiff lacks standing to bring a matter to federal court, the court lacks jurisdiction to decide the merits of the case and must dismiss the complaint. *United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir.1992).

■ To establish Article III standing, plaintiffs must show that they have a "personal stake in the outcome" of the claim asserted by meeting a three-part test. *Pagan v. Calderon*, 448 F.3d 16, 27 (1st Cir.2006) (citing *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). (internal citations omitted). *Id.* They must show (1) "a concrete and particularized injury in fact, (2) a causal connection that permits tracing the claimed injury to defendant's actions, and (3) a likelihood that prevailing in the action will afford some redress for the injury." *Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council*, 589 F.3d 458, 467 (1st Cir.2009) (internal quotation marks omitted).

■ The Supreme Court has held that the party invoking federal jurisdiction bears the burden of establishing these elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations omitted). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any

other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation." *Id.* (internal citations omitted). Thus, at the pleading or motion to dismiss stage, "general factual allegations of injury resulting from the defendant's conduct may suffice," because "[the courts] presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (internal citation omitted).

Defendants argue that plaintiffs have no property interest, either "as innocent third parties [or] as interested parties with property interest in the motor vehicles." (Docket No. 48 at p. 7.) Therefore, defendants contend that plaintiffs' economic interests are not at stake and no real injury is present.[2] *Id.* at p. 11. This "speculative injury," defendants state, "is not traceable to the letter of Act 119." *Id.* at p. 11. Therefore, they argue that the Court should dismiss the case for lack of subject matter jurisdiction. *Id.* The Court finds defendants' arguments unpersuasive.

■ Plaintiffs do not need to prove that they have a property interest at the motion to dismiss stage. They only need to state "general factual allegations" to establish that they have standing. *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130. Plaintiffs have sufficiently alleged that they have a "personal stake in the outcome" of the claims asserted. First, they have stated general factual allegations of a concrete and particularized injury. Plaintiffs have stated that they have subrogation rights to the liens that are registered on the license and title

---

2. Defendants also argue that "only the person toward whom the state action was directed, and not those incidentally affected, may maintain a section 1983 claim." (Docket No. 48 at p. 6.) Defendants are unclear as to which section 1983 they are referring to but cite to a case in this district that addresses civil rights claims that were brought pursuant to 42 U.S.C. § 1983. *Id.* Defendants also make arguments regarding section 1983 in other sections of their motion to dismiss. (*See, e.g.,* Docket No. 48 at p. 13.) Plaintiffs do not indicate in their amended complaint, however, that they are bringing their claims pursuant to 42 U.S.C. § 1983. (*See* Docket No. 10.)

of forfeited vehicles. (Docket No. 10 at ¶ 16.) Plaintiffs allege that they have personally suffered an injury because Law 119 prevents them from challenging any forfeiture on their own behalf. (*See* Docket No. 52 at p. 8–9.) Furthermore, plaintiffs have sufficiently alleged that they will suffer an economic injury because they have to pay out insurance claims but cannot recuperate their losses because of Law 119. (Docket No. 10, ¶¶ 59–60); *see Lujan,* 504 U.S. at 582, 112 S.Ct. 2130 (discussing how "an economic interest" often is sufficient to confer standing). Second, plaintiffs have stated general factual allegations of a causal connection that permits tracing the claimed injury to defendants' actions. Plaintiffs allege that the enactment of Law 119 and its enforcement is what will cause them their injury. (*See* Docket No. 10.) Indeed, the text of Law 119 specifically disallows plaintiffs from challenging any forfeiture on their own behalf. (Docket No. 26–1 at p. 8.) Finally, plaintiffs have stated general factual allegations of the likelihood that prevailing in the action will afford some redress for the injury. If plaintiffs receive their requested relief—a declaratory judgment and injunction—then defendants will be prevented from enforcing Law 119 and therefore, plaintiffs will be able to contest forfeitures on their own behalf.

Additionally, defendants cite Puerto Rico Supreme Court opinions that allegedly support their claim. Defendants fail to file, however, certified English translations of such authority pursuant to the Local Rules of this Court. *See* D.P.R. Loc. Civ.R. 5(g) ("All documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation into English prepared by an interpreter certified by the Administrative Office of the United States Courts."); *cf.* 48 U.S.C. § 864 ("All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language."). Therefore, the Court will not consider this authority until defendants file certified English translations. *See Puerto Ricans for Puerto Rico Party v. Dalmau,* 544 F.3d 58, 67 (1st Cir.2008) ("Where a party makes a motion to dismiss based on a decision that was written in a foreign language, the party must provide the district court with and put into the record an English translation of the decision.").

In their motion to dismiss, defendants argue in a footnote that they have not submitted certified translations of the Puerto Rico Supreme Court cases cited in their motion because the "purpose of citing these cases is to have the Court take judicial knowledge of the jurisprudence set forth therein, not as evidence or to establish any facts." (*See* Docket No. 48 at p. 9.) They further contend that the First Circuit Court of Appeals held that "this is a proper course of action and that certified translations may be filed if and when the case goes on appeal." *Id.* Defendants rely on *Berrios–Romero v. Estado Libre Asociado de Puerto Rico* to support their contentions. 641 F.3d 24, 26–27 (1st Cir. 2011). This argument is unavailing. The plaintiff in *Berrios–Romero* argued that the First Circuit Court of Appeals should ignore an English translation of a relevant Puerto Rico decision because it was not put into the record until the appeal. The *Berrios–Romero* court held that it can take judicial notice of law at any time and found that it was unnecessary to ignore an English translation "simply to punish the derelictions of district court counsel" when appellate counsel has remedied the error. 641 F.3d at 28. The *Berrios–Romero* court's holding, therefore, focuses on whether the court should consider an already-filed certified English translation

and not whether it was proper for certified translations to be filed on appeal. Because defendants have not demonstrated that plaintiffs' factual allegations are insufficient to meet standing requirements, the Court finds that plaintiffs pled sufficient information to demonstrate that they have standing.

## IV. Discussion

### A. Plaintiffs' Takings Claim

Defendants argue that plaintiffs fail to state a claim for a violation of the Takings Clause of the Fifth Amendment to the United States Constitution. (*See* Docket No. 48 at p. 14.) The Takings Clause provides that: "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. Defendants argue that there is no physical taking. *Id.* at pp. 12–15. Even if there were a taking, defendants argue, there is just compensation "since the Commonwealth returns the vehicles or pays the amount of the assessment of said property plus the interest accumulated since the seizure." *Id.* at p. 15. Plaintiffs respond, however, that there are no grounds for "the State . . . to take away the property interests of a party with a recorded lien and make it their own property, without just compensation." (Docket No. 52 at p. 8.) The Court finds plaintiffs' arguments unpersuasive.

■ The Supreme Court has held that an *in rem* forfeiture of property involved in criminal activity is not a taking for which just compensation is required. *See Bennis v. Michigan*, 516 U.S. 442, 452, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996) (forfeiture of car used in prostitution was not a taking and "[t]he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."); *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680–90, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). Other circuit courts, including the First Circuit Court of Appeals, have also followed suit and have held that seizures pursuant to civil forfeiture statutes are not takings under the Fifth Amendment to the United States Constitution but rather, an exercise of the government's police power. *See, e.g., Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1331 (Fed.Cir.2006) ("When property has been . . . subjected to *in rem* forfeiture proceedings, such deprivations are not 'takings' for which the owner is entitled to compensation."); *U.S. v. $7,990.00 in U.S. Currency*, 170 F.3d 843, 845–846 (8th Cir.1999) (". . . [t]he forfeiture of contraband is an exercise of the government's police power, not its eminent domain power. A forfeiture is not subject to the Fifth Amendment's Takings Clause when it deprives an innocent owner of his property."); *United States v. One Parcel of Real Property with Buildings, Appurtenances, and Improvements, Known as Plat 20, Lot 17, Great Harbor Neck, New Shoreham, R.I.*, 960 F.2d 200, 210 (1st Cir.1992) ("We think it is settled that if the federal government's actions comport, procedurally and substantively, with the terms of a lawfully enacted forfeiture statute, it may seize private property without compensating the owner.")

■ Therefore, because the Supreme Court and the First Circuit Court of Appeals have specifically held that forfeitures are not takings under the Fifth Amendment of the United States Constitution, plaintiffs' claim that Law 119 violates the Takings Clause fails. Accordingly, defendants' motion to dismiss for failure to state a claim under the Takings Clause is **GRANTED.**

## B. Plaintiffs' Due Process Claim

■■■■ Plaintiffs also claim that Law 119 fails to meet minimal procedural due process requirements under the United States Constitution. The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that substantive rights, life, liberty, and property, "cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). "Due Process claims may take either of two forms: 'procedural due process' or 'substantive due process.'" *Pittsley v. Warish*, 927 F.2d 3, 6 (1st Cir. 1991). Defendants argue that plaintiffs do not establish either a substantive due process or a procedural due process claim. (*See* Docket No. 48 at p. 15–16.) Plaintiffs assert, however, that their complaint only addresses procedural due process violations.[3] (*See* Docket No. 52 at p. 8.) The Court, therefore, does not evaluate any substantive due process claims. With regard to the plaintiffs' claim for a procedural due process violation, the Court finds that plaintiffs have alleged sufficient facts to state a claim.

■■■ To establish a procedural due process claim, plaintiffs must show that 1) they had a liberty or property interest, and 2) that defendants deprived them of that interest without a constitutionally adequate process. *Logan v. Zimmerman*

*Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Gonzalez–Droz v. Gonzalez–Colon*, 660 F.3d 1, 13 (1st Cir.2011) (internal citation and quotation marks omitted); *PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 30 (1st Cir. 1991).

### 1. Deprivation of Property

■■■ To have a constitutionally protected property interest, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *see also Coyne v. City of Somerville*, 972 F.2d 440, 443 (1st Cir.1992). Property interests are not created by the Constitution; instead, "they are created ... by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577, 92 S.Ct. 2701.

■■■ Defendants argue that because plaintiffs have no property·interest, the Court must dismiss the due process claim. (Docket No. 17 at p. 22.) They argue that the only property affected by Law 119 is the seized automobile and that plaintiffs

---

3. Plaintiffs' amended complaint is vague as to exactly which claims they are establishing under which constitutional provisions. Plaintiffs state that "procedural due process requires pre-seizure notice and an opportunity to be heard." (Docket No. 10 at ¶ 40.) This seems to be a procedural due process claim under the Due Process Clause of the Fourteenth Amendment; immediately after plaintiffs' statement about procedural due process, however, they cite the Fifth·Amendment and discuss the Takings Clause. *Id.* at ¶ 41. Plaintiffs have argued, however, that Law 119

"must be declared invalid under the Fifth and Fourteenth Amendments ..." *Id.* at ¶ 47. Furthermore, defendants also address plaintiffs' arguments under the Due Process Clause of the Fourteenth Amendment. (*See* Docket No. 48 at p. 16.) Plaintiffs do not dispute this analysis by the defendants and state in their opposition to defendants' motion to dismiss that "plaintiffs' complaint is based on lack of procedural due process only." Thus, the Court will also analyze the claim as an alleged procedural due process violation.

are not the owners of the property. *Id.* Instead, defendants contend that plaintiffs only have a "conditional creditor" status through subrogation of the financial institutions' rights pursuant to plaintiffs' insurance policy contracts with the institutions. (*See* Docket No. 48 at p. 9.) To support that they have a constitutionally protected property interest, however, plaintiffs state and defendants agree that when a financial institution finances a vehicle, it may register its lien on the licenses and title of the vehicle with the Department of Transportation and Public Works. (*See* Docket Nos. 10 at ¶ 14 and 53 at p. 1.) Defendants argue that these facts are not sufficient to demonstrate a property interest in Puerto Rico. (*See* Docket No. 48 at p. 9.) Defendants cite Puerto Rico Supreme Court authority that allegedly supports their argument but have not filed any certified English translations of the cited opinions pursuant to Local Rule 5(g). ("All documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation into English prepared by an interpreter certified by the Administrative Office of the United States Courts."); *cf.* 48 U.S.C. § 864 ("All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language."). As with defendants' arguments regarding standing, the Court will not consider this authority until defendants file certified English translations. *See Dalmau,* 544 F.3d at 67 (1st Cir.2008) ("Where a party makes a motion to dismiss based on a decision that was written in a foreign language, the party must provide the district court with and put into the record an English translation of the decision."). Therefore, because defendants have not demonstrated that plaintiffs' factual allegations are insufficient to state a property interest in Puerto Rico, the Court finds at this time that plaintiffs have pled sufficient information to suggest that they have a property interest in the seized vehicles.

### 2. Constitutionally Adequate Process

 "[D]ue process ensures that government, when dealing with private persons, will use fair procedures." *Depoutot v. Raffaelly,* 424 F.3d 112, 118 (1st Cir.2005). "An essential principle of due process is that a deprivation of life, liberty, or property be preceded[4] by notice and opportunity for hearing appropriate to the nature of the case." *Loudermill,* 470 U.S. at 542, 105 S.Ct. 1487 (internal citation and quotation marks omitted). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Bibiloni Del Valle v. Puerto Rico,* 661 F.Supp.2d 155, 182 (D.P.R.2009) (internal citations and quotation marks omitted).

 Defendants argue that even assuming that plaintiffs have a property interest in the forfeited vehicles, Law 119's

---

4. Defendants argue that " 'pre-seizure notice and hearing are not required by due process in the context of forfeitures,' " and therefore, that plaintiffs' pre-seizure and forfeiture due process claim should be dismissed with prejudice. (Docket No. 48 at p. 17) (citing *Calero–Toledo,* 416 U.S. at 677, 94 S.Ct. 2080). The Court agrees with defendants that *pre*-seizure and *pre*-forfeiture notice and hearing are not required (emphasis added). The *Calero–Toledo* Court emphasized in its holding, however, that notice and hearing are still required, even though it may occur after seizure. *See* 416 U.S. at 679–80, 94 S.Ct. 2080 ("... we hold that this case presents an 'extraordinary' situation in which postponement of notice and hearing until after seizure did not deny due process"). Therefore, the Court will focus on plaintiffs' and defendants' arguments about whether plaintiffs state a claim for procedural due process regarding *post*-seizure actions under Law 119 (emphasis added).

procedure for the insurance companies to challenge the forfeiture and to recover the vehicle provides constitutionally adequate process. (*See* Docket No. 48 at p. 18.) Plaintiffs respond that under this procedure, however, insurance companies may challenge the forfeiture only on behalf of the owner; they cannot challenge the forfeiture "on their own to defend their own rights and property interest." (*See* Docket No. 52 at p. 8–9.) Defendants have not cited any authority demonstrating that this procedure satisfies the "opportunity to be heard" in order to meet the requirement of constitutionally adequate process. At this stage, without more guidance from the parties on this issue, the Court finds that plaintiffs have sufficiently pled facts to show that they have been deprived of constitutionally adequate process.

The Court, therefore, will not at this juncture dismiss plaintiffs' procedural due process claim. Accordingly, defendants' motion to dismiss plaintiffs' claims for procedural due process violations is **DENIED.**

### C. Plaintiffs' Ex Post Facto Claim

 Plaintiffs also claim that Law 119 violates the Ex Post Facto Clause of the United States Constitution. Article I, Section 9 of the United States Constitution, commonly known as the Ex Post Facto Clause, forbids Congress from enacting a "bill of attainder or ex post facto law." U.S. Const. art. I, § 9, cl. 3. Article I, Section 10 [5] of the United States Constitution prohibits states from doing the same under the Ex Post Facto Clause. While "ex post facto" is defined as "done or made after the fact; having retroactive force or effect," *see* Black's Law Dictionary 661

(9th ed. 2009), the Supreme Court has limited the application of the Ex Post Facto Clause to criminal laws.[6] *See Calder v. Bull*, 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798) (discussing how the Ex Post Facto Clause applies exclusively to the retroactivity of criminal or penal legislation); *see also Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (finding that the Ex Post Facto Clause does not apply to a sex offender registration and notification statute because the statute was a civil sanction and not a criminal one); *Kansas v. Hendricks*, 521 U.S. 346, 369, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (holding that a state's civil commitment statute did not implicate the Ex Post Facto Clause because it was not punitive and not a criminal proceeding). Therefore, when analyzing an Ex Post Facto Clause claim, the Court must first ask whether the challenged law constitutes a civil, regulatory measure or a criminal, punitive one. *Smith*, 538 U.S. at 92, 123 S.Ct. 1140. If the legislature intended to impose punishment, then the inquiry ends. *Smith*, 538 U.S. at 92, 123 S.Ct. 1140. If "the [legislature's] intention[, however,] was to enact a regulatory scheme that is civil and nonpunitive," then the Court must determine whether the "statutory scheme was so punitive either in purpose or effect as to negate that intention to deem it civil." *Simmons v. Galvin*, 575 F.3d 24, 44 (1st Cir.2009) (quoting *United States v. Ward*, 448 U.S. 242, 248–49, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)). Generally, a court will defer to the legislature's stated intent and " 'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a

---

**5.** "No State shall ... pass any ... ex post facto Law." U.S. Const., art. I, § 10, cl. 1. Even though Puerto Rico is not a state, defendants do not contest that the Ex Post Facto Clause binds Puerto Rico.

**6.** In its definition of "ex post facto law," Black's Law Dictionary also states that "retrospective civil laws may be allowed." *See* Black's Law Dictionary 661 (9th ed. 2009).

civil remedy into a criminal penalty." *Smith,* 538 U.S. at 92, 123 S.Ct. 1140 (internal citations omitted).

### 1. The Legislature's Intent as to Whether the Forfeiture Statute is Civil or Criminal

To determine whether a law is civil or criminal, the Court must "ascertain whether the legislature intended for the statute to establish 'civil' proceedings." *Smith,* 538 U.S. at 92, 123 S.Ct. 1140 (2003) (quoting *Kansas,* 521 U.S. at 361, 117 S.Ct. 2072). First, the Court must construe the statute to examine its text and structure to determine the legislative objective. *Id.* (citing *Flemming v. Nestor,* 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960)). Evidence of the legislature's intent to establish a civil measure exists if the legislature "indicated either expressly or impliedly a preference [for civil proceedings]." *Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997).

Plaintiffs have not stated any facts in their amended verified complaint to show that the legislature intended to impose a criminal law. (*See* Docket No. 10.) Furthermore, defendants have filed a certified translation of Law 119, which shows that the legislature expressly intended to impose a civil measure. (*See* Docket No. 26–1.) Notably, the "Purposes Article" of Law 119 states:

"In our jurisdiction, forfeitures are a civil or *in rem* action, distinct and separate from any *in personam* action. Forfeitures conducted by the State are based on the legal fiction that the thing is the primary offender. The *in rem* proceedings exist independently from the criminal proceedings of an *in personam* nature and are in no way affected by same. Civil forfeiture proceedings may be conducted and concluded before a person is accused, declared guilty or absolved. In fact, they may be conducted even when no charges have been filed. This is due to the fact that the civil action is aimed at the thing itself; generally, the guilt or innocence of the owner is irrelevant in regards to the legitimacy or illegitimacy of the civil forfeiture. *Goldsmith–Grant Co. v. United States,* 254 U.S. 505[, 41 S.Ct. 189, 65 L.Ed. 376] (1921). *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663[, 94 S.Ct. 2080, 40 L.Ed.2d 452] (1974). *United States v. One Assortment of 89 Firearms,* 465 U.S. 354[, 104 S.Ct. 1099, 79 L.Ed.2d 361] (1984)." (*Id.* at p. 2, translation provided by defendants.)

Therefore, plaintiffs have failed to show facts indicating that the legislature intended to establish a criminal or punitive measure. The defendants have shown, however, that the legislature expressly intended to impose a civil, not criminal, measure.

### 2. Clear Proof to Override Legislative Intent to Impose Civil Measure

Because the legislature stated that its intent was to enact a civil and nonpunitive law, the Court must then determine whether the statute was so punitive as to negate the intention to make it civil. *Simmons,* 575 F.3d at 44 (1st Cir. 2009). Generally, the Court will defer to the legislature's stated intent and " 'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Smith,* 538 U.S. at 92, 123 S.Ct. 1140 (internal citations and quotations omitted). When analyzing the purpose or effect of a statutory scheme, the non-exclusive and non-dispositive factors test set forth in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) are useful guide-

posts. *See Smith,* 538 U.S. at 97, 123 S.Ct. 1140; *see also Simmons,* 575 F.3d at 44. The factors are: "1) whether the sanction involves an affirmative disability of restraint; 2) whether it has historically been regarded as punishment; 3) whether it comes into play only on a finding of scienter; 4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; 5) whether the behavior to which it applies is already a crime; 6) whether there is a rational connection to a nonpunitive purpose; and 7) whether it appears excessive in relation to the alternative purpose assigned." *Id.* (citing *Mendoza–Martinez,* 372 U.S. at 168–69, 83 S.Ct. 554). Whether a law is "so punitive in fact" as to violate the ex post facto prohibition, however, is a highly context-specific matter. *See Flemming,* 363 U.S. at 617, 80 S.Ct. 1367. Sometimes one factor will be dispositive of whether a law is punitive and other times, a different factor will be crucial to whether a law is punitive for ex post facto purposes. *See, e.g., Ward,* 448 U.S. at 259–60, 100 S.Ct. 2636 (discussing only one commonly considered factor); *United States v. Ursery,* 518 U.S. 267, 268–69, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) (finding that forfeiture is civil by focusing only on the facts that forfeitures are historically considered to be civil and that forfeitures do not require a finding of scienter); *see also Doe v. Pataki,* 120 F.3d 1263, 1272–76 (2d Cir.1997) (discussing various Supreme Court opinions that found different factors to be dispositive).

Plaintiffs fail to present any arguments or facts regarding these factors to negate the legislature's stated intent, and therefore, waive these arguments. *See United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). Instead, plaintiffs'

statements "merely parrot" what is required to show an ex post facto law. *Ocasio–Hernandez,* 640 F.3d at 12 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). In their verified amended complaint, plaintiffs cursorily assert that forfeiture statutes are penal because they are "quasi-criminal procedures" and all Fourth Amendment, Fifth Amendment, and Fourteenth Amendment protections are applicable to them. (Docket No. 10 at ¶ 27.) They also contend that forfeiture statutes are penal "since by design, they are enacted to punish a criminal conduct" and that frequently, an asset forfeiture is related to a "criminal action against [the asset's] owner." (Docket No. 10 at ¶ 45.) Plaintiffs provide no other facts to support their conclusion that forfeiture statutes are penal in their verified amended complaint. (*See* Docket No. 10.)

 Even if plaintiffs presented facts in regards to these factors, the Court finds that plaintiffs' claim that Law 119 violates the Ex Post Facto Clause fails. The Court finds that an analysis of the *Mendoza–Martinez* factors strongly suggest that the purpose of Law 119 is, indeed, civil and not criminal. With regard to the first factor, the statute does not impose any affirmative disability or restraint, "physical or otherwise." *Simmons,* 575 F.3d at 44. The First Circuit Court of Appeals has stated that "imprisonment . . . is the paradigmatic affirmative disability or restraint." *Id.* (quoting *Smith,* 538 U.S. at 100, 123 S.Ct. 1140). With regard to the second factor, the Supreme Court and the First Circuit Court of Appeals have noted the "historic civil nature of forfeiture statutes" and "ha[ve] repeatedly refused to limit [the forfeiture statutes'] application by imposing the full range of constitutional protections usually associated with criminal sanctions."

*$250,000 in U.S. Currency,* 808 F.2d at 900. With regard to the third factor, Law 119's effectiveness does not depend on a finding of scienter: forfeiture may occur with or without the government demonstrating scienter. With regard to the fourth, sixth, and seventh factors, while forfeiture does serve as a deterrent, (*see* Docket No. 26–1, p. 1), the Supreme Court has stated that deterrence in civil forfeiture statutes may serve civil as well as criminal goals. *See Ursery,* 518 U.S. at 292, 116 S.Ct. 2135; *see also Calero–Toledo,* 416 U.S. at 668 n. 26, 94 S.Ct. 2080 ("Seizure and forfeiture statutes also help compensate the Government for its enforcement efforts and provide methods for obtaining security for subsequently imposed penalties and fines.") Furthermore, the "Purposes Article" of Law 119 states valid civil goals. (*See* Docket No. 26–1 at p. 1.) Law 119 aims to establish a "speedy, fair and uniform procedure" for asset forfeiture and to prevent "the seized property from deteriorating due to passage of time." *Id.* The statute does not appear excessive in relation to the alternative civil purposes, because Law 119 is modeled after federal forfeiture statutes that have been deemed civil. (*See* Docket 10 at ¶ 44.) With regard to the fifth factor, while an alleged crime must have occurred to trigger the forfeiture of an asset, a civil forfeiture is an *in rem* action that is "aimed at the thing itself." (*See* Docket No. 26–1, p. 2.) The forfeiture exists independently from any criminal proceedings, and applies whether or not the owner of the item is guilty or innocent. The Supreme Court

has also stated that it is " 'insufficient to render [a] statut[e] punitive' " just because it may be " 'tied to criminal activity.' " *Simmons,* 575 F.3d at 45 (citing *Ursery,* 518 U.S. at 291, 116 S.Ct. 2135).[7]

In addition, the Supreme Court and the First Circuit Court of Appeals have already described similar federal forfeiture statutes as civil in nature. Plaintiffs argue, however, that "most circuit courts of appeals have uniformly expressed that forfeiture laws are penal in nature ...," but fail to point to any case law that supports their assertion. (Docket No. 52 at p. 10.) Plaintiffs then state that the First Circuit Court of Appeals has specifically "determined that the ex post facto prohibition applies to forfeiture procedures." *Id.* at p. 10. They cite only one case, *United States v. One Parcel of Real Property,* 395 F.3d 1 (1st Cir.2004), to support this proposition. (Docket No. 52 at p. 10.) The *One Parcel* court, however, did not address any ex post facto claim; instead, the court discussed how the forfeiture of real property used to commit a drug offense was not grossly disproportional to the gravity of the crime so as to violate the Excessive Fines Clause of the Eighth Amendment. Plaintiffs also ignore First Circuit case law that is on point. The First Circuit Court of Appeals has stated that while the Supreme Court "has considered forfeiture statutes as criminal for the purpose of protecting certain fourth and fifth amendment rights, [the statutes] are predominantly civil in nature." *United States v. $250,000 in United States Currency,* 808

---

**7.** Although the *Ursery* Court analyzed civil forfeiture statutes with regards to the Double Jeopardy Clause, circuit courts of appeals have held that the same analysis applies to whether underlying statutes are criminal or penal for purposes of the Ex Post Facto Clause. *See, e.g., United States v. Certain Funds Contained in Account Numbers 600–306211–006, 600–306211–011 & 600–306211–* *014 Located at Hong Kong & Shanghai Banking Corp.,* 96 F.3d 20, 26 (2d Cir.1996). Furthermore, the Supreme Court also implicitly approved the usage of one test for challenges to the Double Jeopardy Clause and the Ex Post Facto Clause when it undertook a single analysis to answer both constitutional challenges. *See Hendricks,* 521 U.S. at 370, 117 S.Ct. 2072.

F.2d 895, 900 (1st Cir.1987). The First Circuit Court of Appeals has "rejected the argument that the forfeiture provisions of 21 U.S.C. §§ 881 [,a federal forfeiture law,] trigger the panoply of constitutional safeguards present in criminal actions, reaffirming that this statute is 'predominantly civil in nature.'" *Id.; see also United States v. One 1974 Porsche 911–S Vehicle*, 682 F.2d 283, 285 (1982) ("A forfeiture proceeding is a civil, *in rem* action that is independent of any factually related criminal actions.").

Therefore, plaintiffs fail to state a claim for an Ex Post Facto Clause violation because they fail to state any arguments or facts to negate the legislature's stated intent. Furthermore, even if plaintiffs presented facts in regard to the *Mendoza–Martinez* factors, the Court finds that plaintiffs fail to state clear proof to override the legislature's stated intent to impose a civil measure. Plaintiffs ignore case law that is on point and fail to provide supporting facts or case law for their perfunctory arguments. Their claim that Law 119 is penal and that its retroactivity makes it an ex post facto law fails.

Therefore, to the extent that plaintiffs fail to state a claim that Law 119 violates the Ex Post Facto Clause of the United States Constitution, defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6) is **GRANTED** in part.

### D. Plaintiffs' Contract Clause Claim

 The Contract Clause declares that: "No State shall … pass any … Law impairing the Obligation of Contracts." U.S. Const. art. I., § 10, cl. 1. The Contract Clause protects individuals and legal entities who have freely entered into contracts from legislative action that impairs the obligations under those contracts. *See Rooker v. Fidelity Trust Co.*, 261 U.S. 114, 118, 43 S.Ct. 288, 67 L.Ed. 556 (1923).

To prevail on a Contract Clause claim, a plaintiff must meet a two-part test. *See Parker v. Wakelin*, 123 F.3d 1, 4–5 (1st Cir.1997). The first inquiry is whether a "change in state law has resulted in the substantial impairment of a contractual relationship." *Parella v. Retirement Bd. of the Rhode Island Emp.'s Ret. Sys.*, 173 F.3d 46, 59 (1st Cir.1999) (internal quotations and citations omitted). If a substantial impairment is found, the Court must then address the second inquiry, which is "whether or not the impairment is nonetheless justified as reasonable and necessary to serve an important public purpose." *Parella*, 173 F.3d at 59 (quoting *United States Trust Co. v. New Jersey*, 431 U.S. 1, 25, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977)); *see also Houlton Citizens' Coalition v. Town of Houlton*, 175 F.3d 178, 191 (1st Cir.1999) (internal citations omitted) ("… even a state law that creates a substantial impairment does not transgress the Contract Clause as long as it is appropriate for, and necessary to, the accomplishment of a legitimate public purpose.").

#### 1. Substantial Impairment

 The first inquiry, whether a substantial impairment exists, is broken down into three elements: (1) whether there is a contractual relationship, (2) whether a change in law impairs that contractual relationship, and (3) whether the impairment is substantial. *Id.* (quoting *General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992)). Whether an impairment is substantial requires a court to consider the parties' reasonable expectations to the alleged contract. *Mercado–Boneta v. Administracion del Fondo de Compensacion Al Paciente*, 125 F.3d 9, 13 (1st Cir.1997). Those expectations must be adjusted accordingly, however, when the parties are "operating in a heavily regulated indus-

try," such as insurance, or when the parties can "readily foresee future regulation involving the subject matter of their contract." *Id.* at 13–14. Generally, the "severity of the impairment measures the height of the hurdle the state legislation must clear. Minimal alteration of contractual obligations may end the inquiry at its first stage." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 245, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978). If there is severe impairment, however, then there must be "a careful examination of the nature and purpose of the state legislation." *Id.*

■■■ The Court finds that plaintiffs have pled sufficient facts to show that a substantial impairment exists. First, plaintiffs have shown that contractual relationships exist between them and the financial institutions that they insure. (*See* Docket No. 10 at ¶ 53; *see also* Docket Nos. 60–1 and 60–2.) Second, plaintiffs have alleged that Law 119 impairs those contractual relationships because the law prevents plaintiffs from subrogating in the position of the financial companies to institute forfeiture proceedings pursuant to their insurance contracts. (*See* Docket No. 10, ¶¶ 59–60.) Third, the plaintiffs allege that this impairment is substantial because they may still be compelled to pay claims by the financial institutions when forfeiture occurs but cannot exercise their right to subrogate under the insurance contract to appear in an asset forfeiture proceeding to mitigate that loss. *Id.*

Defendants argue that when looking at this first inquiry of whether or not a substantial impairment of a contractual relationship has occurred, the Court should take note that the insurance industry is "subject to a strict government regulation." (*See* Docket No. 48 at p. 20.) Defendants also argue that the states have "a virtually exclusive domain over the insur-

ance industry" and therefore, have "broad authority to regulate the insurance industry." *Id.* While it may be true that states have broad authority to regulate the insurance industry, Law 119 is a civil forfeiture statute and the purpose of the statute has nothing to do with the regulation of the insurance industry. The particular type of regulation must still be foreseeable. *See Mercado–Boneta*, 125 F.3d at 9, n. 7 (discussing how the "Contract Clause analysis would be enervated if the mere fact of regulation meant there was always foreseeability of more regulation and thus no substantial impairment"). The analysis might be different if the purpose of the statute was specifically to regulate the insurance industry. *See id.* at 14–15 (finding that a Puerto Rico statute abrogating a malpractice liability insurer, an entity created by Puerto Rico, and thus, barring claims against insurer, was not a substantial impairment of the insured physician's contract with the insurer); *see also Energy Reserves Group, Inc. v. Kansas Power and Light Co.*, 459 U.S. 400, 416, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983) (holding that a Kansas statute imposing certain regulations on oil and gas contracts did not impair existing contractual obligations between an oil company and a public utility).

## 2. Reasonable and Necessary to Serve a Legitimate Public Purpose

Because the Court has determined that plaintiffs state sufficient facts to show a substantial impairment, the Court must address the second inquiry in the Contracts Clause analysis: whether the legislation is reasonable and necessary to serve a legitimate public purpose.

■■■ The Supreme Court has determined that "the State ... must have a significant and legitimate public purpose behind a regulation [that is challenged under the Contracts Clause], such as remedying of a broad and general social or

economic problem." *Energy Reserves,* 459 U.S. at 411–12, 103 S.Ct. 697. The legitimate public purpose requirement "guarantees that the State is exercising its police power, rather than providing a benefit to special interests." *Id.* at 412, 103 S.Ct. 697. Once a legitimate purpose has been identified, the Court must still find that the legislation is reasonable and necessary to achieve such a purpose. *See Houlton Citizens' Coalition,* 175 F.3d at 191. "When the contracts at issue are private and no appreciable danger exists that the governmental entity is using its regulatory power to profiteer or otherwise serve its own pecuniary interests," the Court "may defer to the legislature's judgment" and need not assess the reasonableness or necessity of the impairing regulation. *Id.; see also Mercado–Boneta,* 125 F.3d at 16 (discussing how a legislative decision "deserves significant deference because the state is essentially acting not according to its economic interest, but pursuant to its police powers"). The Supreme Court has warned, however, that "private contracts are not subject to unlimited modification under the police power." *United States Trust Co.,* 431 U.S. at 22, 97 S.Ct. 1505; *Wakelin,* 123 F.3d at 5 (when a state's own self-interest is at stake, a state's decision about necessity and reasonableness is given less deference).

▇▇ Drawing all reasonable inferences in plaintiffs' favor, the Court finds that plaintiffs have stated sufficient facts to suggest that Law 119 fails to address a legitimate public purpose in a reasonable and necessary manner. Defendants argue that the only interest behind Law 119 is to "eliminate from the market every property that is being used in the commission of a crime and to expedite the forfeiture process" while "providing a due process to the owner [8] of the motor vehicle." (Docket No. 48 at p. 21.) Assuming that this stated interest is a "broad and general social or economic problem," and therefore, a legitimate public purpose, the Court must then address the reasonableness and necessity of the regulation. *See Energy Reserves,* 459 U.S. at 411–12, 103 S.Ct. 697. Plaintiffs argue that the regulation fails to serve reasonably as punishment and fails to stop crime. (Docket No. 52 at p. 11.) Instead, plaintiffs assert, the Puerto Rico government has an economic interest in enacting Law 119. *Id.* Specifically, plaintiffs state that the purported "owner" of a vehicle has not paid in full for the car, and, thus, forfeiting the car does not serve to punish the owner. *Id.* Therefore, plaintiffs argue that forfeiting property with a "registered lien in favor of a third party" without any way to recover the property is just a way for the "government to enrich itself on the account of innocent third parties." *Id.* Plaintiffs state several facts to bolster their argument. First, plaintiffs indicate that as registered lien holders, they can only "file a complaint in court challenging the forfeiture *on behalf of the owner of the vehicle* " (emphasis added). (*See* Docket No. 10 at ¶ 21.) In addition, in order to even challenge the forfeiture on behalf of the owner, plaintiffs must post bond. (*See* Docket 26–1 at p. 7–8.) After the posting of a bond, plaintiffs must then show that they had "domain and control of the vehicle" during forfeiture in order to recover it. (*See* Docket No. 10 at ¶ 23.) Drawing the reasonable inference that in most cases, the insurance companies do not have "domain or control of the vehicle," it seems that they will rarely recover the vehicle or

---

8. As previously mentioned, Law 119 states that "the definition of owner of the property deals with the identity of the individual who exercise dominion and control over the prop-

erty in question before it was seized." (*See* Docket No. 26–1 at p. 2.) This definition, therefore, excludes those who have a registered lien on the property.

the bond that they posted. Furthermore, it seems reasonable to draw the inference that most insurance companies and the purported "owners," as defined in Law 119, will not attempt to make a claim in forfeiture proceedings. Thus, after viewing the facts in a light most favorable to the plaintiff, the Court finds that plaintiffs have stated sufficient facts to show that Law 119 does not address a legitimate public purpose in a reasonable and necessary manner.

At the motion to dismiss stage, the Court need only find a plausible entitlement to relief in order for plaintiffs' contract clause claim to survive dismissal. After drawing all reasonable inferences in plaintiffs' favor, we conclude that such burden has been met. These issues may be revisited, if warranted, at the summary judgment stage.

Therefore, to the extent that plaintiffs state a claim that Law 119 violates the Contract Clause of the United States' Constitution, defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6) is **DENIED** in part.

## V. CONCLUSION

For the reasons expressed, the Court **GRANTS IN PART AND DENIES IN PART** defendants' motion to dismiss. (Docket No. 48.)

Defendants' request to dismiss plaintiffs' claims for lack of standing is **DENIED**. The motion to dismiss is **DENIED** as to plaintiffs' claims under the Due Process Clause and the Contract Clause of the United States Constitution, and those claims remain active. The motion to dismiss is **GRANTED** as to plaintiffs' claims under the Takings Clause and the Ex Post Facto Clause of the United States Consti-

tution. Those claims are hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

## OPINION AND ORDER

Before the Court is the motion for reconsideration filed by defendants Commonwealth of Puerto Rico, the Department of Justice of the Commonwealth of Puerto Rico, and, in his official capacity as Attorney General, Guillermo Somoza–Colombani (collectively, "defendants"), (Docket No. 79), and the motion for reconsideration filed by plaintiffs Universal Insurance Company, MAPFRE PRAICO Insurance Company, and Cooperativa de Seguros Multiples de Puerto Rico (collectively, "plaintiffs"), (Docket No. 84). For the reasons set forth below, defendants' motion for reconsideration is **DENIED** and plaintiffs' motion for reconsideration is **DENIED in part.**

## DISCUSSION

### I. Background

On July 12, 2011, the Commonwealth of Puerto Rico Legislative Assembly ("the legislature") passed Public Law No. 119, known as the Uniform Seizure and Forfeiture Act of 2011 ("Law 119"). Law 119 establishes the rules that govern all asset forfeiture procedures in Puerto Rico. (Docket No. 26–1 at p. 1.) It repealed Public Law No. 93 of 1988 ("Law 93"), which "granted certain Commonwealth instrumentalities the authority to seize assets used for illegal purposes." *Id.* According to the Puerto Rico legislature, the main reason for enacting Law 119 was that "multiple amendments and judicial constructions ... have caused confusion in the implementation of [Law 93]." *Id.* Therefore, Law 119 was passed allegedly to "clarif[y] the requirements that each person must meet to challenge a seizure." *Id.*

Notably, Law 119 changes the requirements for who can challenge a forfeiture. *Id.* Its Article 15 provides that "persons notified as provided in this Act and who demonstrate they are the *owners* of the property" may challenge the seizure (emphasis added). (Docket No. 26–1 at p. 7.) An owner is "the individual who exercised dominion and control over the property in question before it was seized." *Id.* at p. 2. Article 16 then states that:

"the plaintiff [who challenges a seizure] shall have the right to furnish a guaranty in favor of the Commonwealth of Puerto Rico ... for the sum of the appraisal of the seized property within twenty (20) days after the complaint challenging the seizure is filed." *Id.* at p. 7–8.

Law 119 also allows insurance companies to challenge automobile seizures, but only on behalf of the owners. Specifically, Article 16 states that:

"In the case of motor vehicles whose insurance policy includes a seizure endorsement, the insurance company may only file a complaint challenging the seizure *on behalf of the owner of the vehicle,* for which it shall have to furnish the guaranty provided in this article (emphasis added). *Id.* at p. 8.

Plaintiffs are licensed by the Office of the Insurance Commissioner to operate as insurance carriers in Puerto Rico. (Docket No. 53 at p. 1.) They provide insurance coverage to banks and other financial institutions that finance the purchase of vehicles. (Docket No. 10 at ¶ 14.) Most vehicles purchased in Puerto Rico are financed; some vehicles are leased. (Docket No. 53 at p. 1.) When a financial institution finances a vehicle, it may register its lien on the license and title of the vehicle with the Department of Transportation and Public Works. *Id.* Financial institutions may require an in-surance policy to finance vehicles. *Id.* Plaintiffs state that they issue those insurance policies to cover a number of risks, including asset forfeiture. (Docket No. 10 at ¶¶ 9–11, 15.) They also assert that when an insured vehicle is seized and then forfeited to the Puerto Rico government, plaintiffs will pay the financial institutions pursuant to their insurance contracts. *Id.* at ¶ 16. Then, plaintiffs allegedly have the right to subrogation where "the insurer is placed in the same legal position as the bank or financial institution that financed the vehicle and is entitled to recover the balance owed to the bank by the proprietor." *Id.*

On September 30, 2011, plaintiffs filed a complaint for declaratory judgment and permanent injunction. (Docket No. 1.) On October 25, 2011, plaintiffs filed a verified amended complaint against all defendants. (Docket No. 10.) In their amended complaint, plaintiffs seek a declaratory judgment to declare Law 119 unconstitutional. *Id.* at ¶¶ 38 and 49. Plaintiffs argue that Law 119 prevents them from exercising their right to subrogation pursuant to their insurance policies with the financial institutions and thus, that Law 119 removes their right to challenge automobile seizures. *Id.* at ¶ 36. Plaintiffs request that defendants be permanently enjoined from enforcing Law 119 because Law 119 violates rights guaranteed by the United States Constitution. *Id.* at ¶ 66. They assert that Law 119 violates the Takings Clause and Due Process pursuant to the Fifth and Fourteenth Amendments, and the *Ex Post Facto* and the Contract Clauses contained in Article I Section 10 of the United States Constitution. *Id.* at ¶¶ 38 and 49.

On November 22, 2011, defendants filed a motion to dismiss, (*see* Docket No. 48), which alleged that plaintiffs failed to state a claim upon which relief can be granted

under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). Defendants argued that plaintiffs (1) have no property interest in the forfeited vehicles and no injury—economic or otherwise—and therefore, have no standing to challenge the constitutionality of the statute, (2) fail to state a claim under the Takings Clause, (3) fail to state a claim for a Due Process violation, (4) fail to state a claim under the *Ex Post Facto* Clause, and (5) fail to state a claim under the Contract Clause. *Id.*

On November 25, 2011, plaintiffs filed an opposition to defendants' motion to dismiss. (*See* Docket No. 52.) Plaintiffs argued that defendants "misinterpret" plaintiffs' arguments regarding the Takings Clause and Due Process, *id.* at p. 2 and 8, and re-asserted that they have stated a claim for an *Ex Post Facto* Clause violation and for a Contract Clause violation, *id.* at p. 9.

On February 23, 2012, the Court issued an order which denied in part and granted in part defendants' motion to dismiss. The Court denied defendants' request to dismiss plaintiffs' claims for lack of standing. (Docket No. 78 at p. 39.) The Court also denied defendants' request to dismiss plaintiffs' claims under the Due Process Clause and the Contract Clause of the United States Constitution. *Id.* The Court granted defendants' motion to dismiss plaintiffs' claims under the Takings Clause

and the *Ex Post Facto* Clause of the United States Constitution. *Id.*

On March 8, 2012, defendants filed a motion for reconsideration and submitted certified English translations of two cases decided by the Supreme Court of Puerto Rico.[1] (Docket Nos. 79, 79–2, 79–4.) Defendants requested that the Court reconsider their arguments in light of the certified English translations. (Docket No. 79 at p. 4.) They also requested that the Court supplement their original motion to dismiss, (Docket No. 48), to include the certified translations. *Id.*

On March 27, 2012, plaintiffs filed their own motion for reconsideration. (Docket No. 84.) Plaintiffs requested that the court reconsider their claim under the Takings Clause of the United States Constitution. *Id.* at p. 1.

## II. Motion for Reconsideration

" 'The Federal Rules of Civil Procedure do not specifically provide for the filing of motions for reconsideration.' " *Sanchez–Perez v. Sanchez–Gonzalez,* 717 F.Supp.2d 187, 193–94 (D.P.R.2010) (internal citations omitted). Any motion for reconsideration is usually decided pursuant to either Federal Rule of Civil Procedure 59(e) ("Rule 59(e)")[2] or Federal Rule of Civil Procedure 60(b) ("Rule 60(b)").[3] *See In re Spittler,* 831 F.2d 22, 24 (1st Cir.1987) (holding that even though the moving party did not state a particular rule that

---

1. The Court had not considered the cases previously because they were submitted only in Spanish and they appeared to be key to the outcome of the proceedings. 48 U.S.C. § 864; *Puerto Ricans for Puerto Rico Party v. Dalmau,* 544 F.3d 58, 67 (1st Cir.2008).

2. Rule 59(e) provides in pertinent part that: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed.R.Civ.P. 59(e).

3. Rule 60(b) provides in pertinent part that:

"On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ... (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; ... (6) any other reason that justifies relief.

permits its motion, "it is settled in this circuit that a motion which asked the court to modify its earlier disposition of case because of an allegedly erroneous legal result is brought under Fed.R.Civ.P. 59(e)."; *see also Fisher v. Kadant, Inc.,* 589 F.3d 505, 512 (1st Cir.2009). A successful Rule 59(e) motion requires that a party "clearly establish a manifest error of law or [ ] present newly discovered evidence." *Markel Am. Ins. Co. v. Diaz–Santiago,* 674 F.3d 21, 32 (1st Cir.2012) (internal quotations and citations omitted). The motion cannot "raise arguments which could, and should, have been made before judgment [was] issued." *Fed. Deposit Ins. Corp. v. World Univ., Inc.,* 978 F.2d 10, 16 (1st Cir.1992) (internal quotations omitted). Motions filed pursuant to Rule 59 are not "confined to the six specific grounds for relief found in Rule 60(b)." *Perez–Perez v. Popular Leasing Rental, Inc.,* 993 F.2d 281, 284 (1st Cir.1993). Conversely, the Rule 60(b) standard requires that a party "demonstrate 'at a bare minimum, that his motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside, he has the [ability] to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted.' " *Fisher,* 589 F.3d at 512.

A motion is characterized pursuant to Rule 59(e) or Rule 60(b) based upon its filing date. *Perez–Perez,* 993 F.2d at 284. "If a motion is served within [twenty-eight][4] days of the rendition of judgment, the motion will ordinarily fall under Rule 59(e)." *Id.* Motions served after twenty-eight days are considered pursuant to Rule 60(b). *Id.* It is important to determine whether the motion for reconsideration is brought pursuant to Rule 59(e) or Rule 60(b) because a motion "for relief from judgment under Rule 60(b), unlike a motion to amend a judgment under Rule 59(e), does not toll the thirty-day appeal period." *Perez–Perez,* 993 F.2d at 283; *see also* App.R. 4(a)(4) (stating that if a party files a motion to "alter or amend the judgment under Civ.R. 59," or a motion "for relief under Civ. R. 60 if the motion is filed no later than 28 days after the judgment is entered," then "the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion"). The Court will first determine under which rule the defendants' motion should be regarded. Then, the Court will address defendants' and plaintiffs' arguments for reconsideration in turn.

## III. Legal Analysis

### 1. Defendants' Motion Implicates Rule 59(e)

The defendants fail to state whether they are bringing their motion pursuant Rule 59(e) or Rule 60(b). (Docket No. 79 at pp. 2–3.) Instead, the defendants simply state that motions for reconsideration "are generally considered under" Rule 59(e) or Rule 60(b). (Docket No. 79 at p. 2.) The Court issued its Opinion and Order, (Docket No. 78), on February 23, 2012, and defendants filed their motion for reconsideration, (Docket No. 79), on March 8, 2012. Therefore, the defendants filed their motion within the twenty-eight day time period provided by Rule 59. Fed.R.Civ.P. 59(e); *see also Perez–Perez,* 993 F.2d at 284 ("the litigant who gets his motion in on time enjoys the . . . relief provided by Rule 59 . . ."). Because the defendants timely filed their motion for reconsideration, Rule

---

**4.** A 2009 Amendment increased the filing time period from ten to twenty-eight days.

Fed.R.Civ.P. 59(e).

59(e) is implicated for the analysis. *See id.* The Court will now address defendants' arguments for reconsideration.

## 2. Defendants' Arguments for Reconsideration

The defendants argue that the Court "denied defendants' request to dismiss plaintiffs' claim for lack of standing in sum" because defendants cited Puerto Rico Supreme Court authority but failed to file any certified English translations pursuant to Local Rule 5(g). (Docket No. 79 at p. 2.) They attach two certified English translations to their motion to reconsider, (*see* Docket Nos. 79, 79–2, and 79–4), and urge the Court to consider the certified English translations so that it may "properly address defendants' argument as to standing and due process." *Id.* Given that the defendants have filed the certified English translations, which, they contend, "could determine whether this Court lacks jurisdiction to hear the case," (*see* Docket No. 79 at p. 3), the Court has reviewed the materials. The Court, however, still finds that defendants' arguments unavailing.

### a. Standing

"Article III of the United States Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). A crucial part of the case and controversy limitation on the power of federal courts is the requirement that a plaintiff must have standing to invoke federal jurisdiction. *Id.* at 471–73, 102 S.Ct. 752. "[S]tanding is a threshold issue" and determines "whether the court has the power to hear the case, and whether the putative plaintiff is entitled to have the court decide the merits of the case." *Libertad v. Welch*, 53 F.3d 428, 436 (1st Cir.1995) (internal citation omit-

ted). Therefore, if a plaintiff lacks standing to bring a matter to federal court, the court lacks jurisdiction to decide the merits of the case and must dismiss the complaint. *United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir.1992).

To establish Article III standing, plaintiffs must show that they have a "personal stake in the outcome" of the claim asserted by meeting a three-part test. *Pagan v. Calderon*, 448 F.3d 16, 27 (1st Cir.2006) (citing *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). (internal citations omitted). *Id.* They must show (1) "a concrete and particularized injury in fact, (2) a causal connection that permits tracing the claimed injury to defendant's actions, and (3) a likelihood that prevailing in the action will afford some redress for the injury." *Weaver's Cover Energy, LLC v. R.I. Coastal Res. Mgmt. Council*, 589 F.3d 458, 467 (1st Cir.2009) (internal quotation marks omitted).

The Supreme Court has held that the party invoking federal jurisdiction bears the burden of establishing these elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations omitted). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation." *Id.* (internal citations omitted). Thus, at the pleading or motion to dismiss stage, "general factual allegations of injury resulting from the defendant's conduct may suffice," because "[the courts] presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (internal citation omitted).

In its motion to dismiss, defendants first argue that plaintiffs lack standing to challenge the legislation as innocent third parties. (Docket No. 48 at p. 9.) Second, defendants argue that plaintiffs have no concrete injury because they lack a property interest in the motor vehicles; defendants argue that they "hold no property rights over the forfeited vehicles and Act 119 does not affect plaintiffs' economic interest over the lien [that] they hold [over the vehicles]." *Id.* Therefore, the defendants argue that because the plaintiffs are not interested parties, they lack standing to challenge the legislation. The Court will address each argument in turn in light of the certified English translations of the Puerto Rico Supreme Court case law cited by defendants.

### i. Innocent Third Party Defense

The defendants contend that the Puerto Rico Supreme Court has held that an innocent third party defense is only available to the owner of the vehicle. *Id.* at p. 7 (citing *General Accident Ins. Co. v. Estado Libre Asociado,* 137 D.P.R. 466, 1994 WL 909546 (1994)). The Puerto Rico Supreme Court, the defendants argue, has held that insurance companies are not considered to be owners of vehicles under Puerto Rico law. *Id.* at p. 9 (citing *Negron Placer v. Secretario de Justicia,* 154 D.P.R. 79, 2001 WL 488075 (2001)). Thus, even if a financial institution is notified of a forfeiture, the defendants argue that it is not entitled

to raise an innocent party defense. *Id.* at p. 7. Thus, the defendants contend, Act 119 "does not alter the fact that neither the insurance companies nor the financial institutions have standing to raise the innocent owner defense." *Id.* at p. 7.

The Court agrees with the defendants that plaintiffs are not the owners of the vehicles; owners of vehicles are defined by Puerto Rico law. *See Negron Placer,* 154 D.P.R. at 96 (holding that a financial entity that leased a car to an individual is not an owner but a conditional creditor). Thus, they may not bring an innocent third party defense when challenging forfeitures because an innocent third party defense is only available to the owners of the vehicle. *See General Accident Ins. Co. v. ELA,* 137 D.P.R. at 476–77 (finding that no innocent third party defense exists for financial entities that lease cars and their respective insurance companies, and that the defense is only available by "express legislative mandate.") Furthermore, the United States Supreme Court has stated that the Constitution does not require an innocent owner defense but if states want to provide such protection, they are welcome to do so.[5] *See Bennis v. Michigan,* 516 U.S. 442, 456–457, 116 S.Ct. 994. Indeed, most state legislatures have provided for an innocent owner defense. Thus, defendants are correct in stating that Act 119 did not alter plaintiffs' right to raise an innocent owner defense and, therefore, the plaintiffs may

**5.** The Supreme Court has held that the absence of a statutory innocent owner defense did not violate the Due Process or Takings Clauses of the United States Constitution because Mrs. Bennis had the ability to challenge the trial court's "remedial discretion." *See Bennis v. Michigan,* 516 U.S. 442, 444–45, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996). Therefore, "a key to the avoidance of a violation of the Due Process Clause in *Bennis* was Mrs. Bennis' ability to appeal the trial court's discretion." *Ford Motor Credit Co.,* 394 F.Supp.2d at 613, n. 4, *aff'd,* 503 F.3d 186 (2d

Cir.2007). The lack of a statutory innocent owner defense without any opportunity to be heard before one's property interests are eliminated, however, may still violate the Due Process Clause. *Id.* (discussing how an innocent lienholder did not have the opportunity to be heard before its property interests were eliminated and stating that "Nothing in the Due Process Clause permits an innocent owner's interest in property to be forfeited without the provision of any process to the innocent owner.")

not challenge Act 119 as innocent owners. The mere lack of an innocent owner defense in Puerto Rico, however, does not speak to plaintiffs' property interests in Puerto Rico nor does it speak to whether Act 119 complies with the Due Process Clause of the United States Constitution.

### ii. Property Interest

The defendants next argue that the court in *General Accident Ins. Co.* "recognized that although insurance companies have [a] property interest *in the lien* registered over the motor vehicle, they do not have [a] *property* interest *in the vehicles* they finance, *not being owners* of said vehicles." (Docket No. 48 at pp. 8–9 (citing *General Accident Ins. Co. v. ELA,* 137 D.P.R. at 477).) The defendants also argue that "the economic and legal rights that arise from the lien are not affected" and do not "disappear[ ] with the forfeiture of the vehicle" because insurance companies can opt between "recuperating the vehicle or [ ] fil[ing] a judicial proceeding for debt collection" against the owner. *Id.* As the Court mentioned in its first Opinion & Order, defendants contend that plaintiffs' economic interests are not at stake and no real injury is present. (*See* Docket No. 78 at pp. 9–10.) This "speculative injury," defendants state, "is not traceable to the letter of Act 119." (Docket No. 48 at p. 11.) In short, they argue that the Puerto Rico Supreme Court has held that the plaintiffs have no property interest over the vehicles they ensure, and, therefore, plaintiffs have no standing to pursue a due process challenge. The Court finds these arguments unpersuasive.

Defendants correctly state that property interests are "not created by the Constitution of the United States; they are created and their dimensions are defined by . . . state law." (Docket No. 48 at p. 8.) Furthermore, they admit that "property interest[s] become[sic] protected for purposes of the due process clause when recognized by a *state statute* or *legal contract*" (Docket No. 48 at p. 8) (citing *Marrero–Garcia v. Irizarry,* 33 F.3d 117, 121 (1st Cir.1994)) (internal citation omitted) (emphasis added). In Puerto Rico, the Commercial Transactions Act, P.R. Laws Ann. tit. 19 §§ 2201–2207 (1996) creates the property interest that defendants argue does not exist. It provides that "a secured party has on default the right to take possession of the collateral" provided that it gives the debtor at least two days written notice. *Id.* at § 2203. Therefore, the Commercial Transactions Act provides financing institutions with right to repossess a vehicle if a lessee of the car defaults. The defendants do not dispute this; in fact, they cite to this exact provision in their motion to dismiss. (Docket No. 48 at p. 9.) Instead, they argue that even though repossession of the vehicle may not be available due to forfeiture to the Puerto Rico government, plaintiffs still have "the alternative of filing a debt collection case . . . against the debtor." The defendants cite to *General Accident Insurance Co. v. ELA* and *Negron Placer* for support. The defendants' reliance on *General Accident Insurance Co. v. ELA* and *Negron·Placer,* however, is misplaced.

In *General Accident Insurance Co.,* the court only addresses whether an innocent owners' defense exists for financial institutions and their insurance companies. 137 D.P.R. at 477. It holds that they do not have that defense and that only the legislature may mandate otherwise. *Id.* at 477–78. In reasoning why Puerto Rico does not have an innocent owners' defense for those specific institutions, the Court in *General Accident Insurance Co.* does not interpret any statute about secured creditors' property interest. It does state that the institutions' "economic interest in the lien does not disappear with" the seizure of

the vehicle and that the conditional creditor "may opt between the repossession of the article or the judicial action for collection of money." *Id.* at 477. The court goes on to say that "even when the sold unit cannot be recovered, the right of the seller subsists to the action for collection of money against the purchaser for the balance owed." *Id.* It engages in this discussion only to explain why an innocent owners' defense is unnecessary in Puerto Rico. The court in *General Accident Insurance Co.* makes no finding about whether these institutions have a property interest in the vehicles as lienholders. As discussed above, the Commercial Transactions Act specifically provides that a secured creditor may collect on the property as collateral. Because the statute allows the institutions to collect on the vehicles as collateral, it provides them with a property interest. Law 119 would make it impossible for the financial institutions and their insurance companies to exercise on that property interest. Thus, under Law 119, while the "economic interest" in the lien—the ability to collect against the purchaser—still exists, the property interest in the lien-the ability to collect the collateral-disappears.

Furthermore, defendants completely misrepresent the *Negron Placer* decision. The defendants state the following in their motion to dismiss:

"The Supreme Court of Puerto Rico has clearly stated that financial institutions, and for that matter insurance companies that subrogate in their place, cannot use the forfeiture process to avoid going against the real party responsible for the loss of the vehicle-the *owner who committed an illegal act* with the property. *Negron Placer v. Secretario de Justicia,* 154 D.P.R. 79 (2001)" (emphasis added). (Docket No. 48 at p. 10.)

The *Negron Placer* decision did not address any issues with owners who commit-

ted illegal acts and were then subject to a valid legal forfeiture of a vehicle. Instead, in *Negron Placer,* the confiscation of the vehicle was declared invalid and the Puerto Rico government was required to return the vehicle. 154 D.P.R. at 95. The issue was whether to return the vehicle to Negron Placer, the conditional purchaser who was subjected to an invalid forfeiture, or to Citibank, N.A., the financing institution who was the conditional creditor that allegedly failed to receive installments as agreed to in the conditional sales contract. *Id.* at 94–96. The *Negron Placer* court held that after an *invalid* forfeiture, the car must be returned to Negron Placer and that "if there existed any controversy between [her and Citibank, N.A.] regarding the financing agreement of the purchase, they had to elucidate it through the procedure provided by law for the execution of its guarantee." *Id.* at 96. Therefore, the *Negron Placer* decision does not support defendants' proposition that financial institutions "cannot use the forfeiture process to void going against … the owner who committed an illegal act with the property." (Docket No. 48 at p. 10.)

After examining the certified translations of the Puerto Rico Supreme Court cases cited in defendants' motion to dismiss, the Court finds the defendants' arguments regarding plaintiffs' alleged lack of property interest and concrete injury, and, therefore, a lack of standing to pursue a due process challenge unpersuasive. The Court, therefore, **DENIES** defendants' motion to reconsider these arguments. The Court's previous analysis regarding plaintiffs' standing in its February 23, 2012 Opinion and Order, (Docket No. 78 at pp. 10–11), still stands.

**b. Due Process Clause**

To establish a procedural due process claim, plaintiffs must show that (1) they had a liberty or property interest, and (2)

that defendants deprived them of that interest without a constitutionally adequate process. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Gonzalez–Droz v. Gonzalez–Colon*, 660 F.3d 1, 13 (1st Cir. 2011) (internal citation and quotation marks omitted); *PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 30 (1st Cir.1991). Defendants argue that the certified English translations they filed will allow the Court to "properly address defendants' arguments as to ... due process." (Docket No. 79 at p. 3.) Specifically, defendants point to the Court's discussion of whether plaintiffs have sufficiently pled the first requirement to establish a due process claim: that defendants deprived them of a liberty or property interest. (Docket No. 79 at p. 2 and Docket No. 78 at pp. 18–19.) The certified English translations of the Puerto Rico case law, however, also raise issues regarding the second prong of a procedural due process claim: whether defendants deprived plaintiffs of constitutionally adequate process. Therefore, the Court will discuss briefly the defendants' arguments regarding property interest because the defendants use same argument here as they did for standing. Next, the Court will address the issues with constitutionally adequate process.

### i. Property Interest

The defendants' argument regarding whether plaintiffs had a property interest is the same argument they used in discussing whether plaintiffs had a standing to bring the case before the Court. (Docket No. 78 at p. 17.) The same reasoning, therefore, applies to whether plaintiffs have a property interest for purposes of due process. Furthermore, "it is well-settled that a lien is a constitutionally protectable property interest." *Ford Motor Credit Co. v. New York City Police Dep't*, 394 F.Supp.2d 600, 611 (2d Cir.2005) (cit-

ing *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 798, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 594, 55 S.Ct. 854, 79 L.Ed. 1593 (1935)); *United States v. Perry,* 360 F.3d 519, 525 & n. 4 (6th Cir.2004); *Shelden v. United States,* 7 F.3d 1022, 1026 (Fed.Cir.1993). Therefore, in light of the English translations of the Puerto Rico Supreme Court cases which are now on the record, the Court finds that plaintiffs have sufficiently pled facts to show a constitutionally protected property interest.

### ii. Constitutionally Adequate Process

In addition to showing that they had a liberty or property interest, plaintiffs must sufficiently plead that the defendants deprived them of that interest without a constitutionally adequate process. *Gonzalez–Droz,* 660 F.3d at 13. With regard to this second prong, plaintiffs must have the "notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Due process requires an "opportunity to be heard at a meaningful time and in a meaningful manner." *Bibiloni del Valle v. Puerto Rico,* 661 F.Supp.2d 155, 182 (D.P.R.2009) (internal citations and quotation marks omitted).

As discussed in the Court's February 23, 2012 Opinion and Order, (*see* Docket No. 79 at pp. 20–21), defendants argued that Law 119 "provides a procedure in order for the insurance companies to challenge the forfeiture and recover the vehicle." (Docket No. 48 at p. 18.) The Court also discussed how plaintiffs responded that the procedure in Law 119 allows them to challenge the forfeiture on behalf of others but fails to allow them to defend their own rights and property interest. (Docket No. 79 at p. 21.) Based on these arguments, the Court found that plaintiffs sufficiently

pled facts to show that they have been deprived of constitutionally adequate process.

The defendants only request that the Court reconsider its arguments showing how "the insurance companies failed to demonstrate a property interest at stake in this case in order to establish procedural due process claim." (Docket No. 79 at p. 3.) They do not mention the Court's analysis regarding the second prong of a due process claim, which requires constitutionally adequate process. (*See* Docket No. 79.)

Even if the defendants requested the Court to reconsider defendants' arguments about Law 119's procedure for insurance companies to challenge a forfeiture and recover a vehicle, the Court still declines to reconsider its analysis. As stated above, *see* footnote 5, the Supreme Court has held that the absence of a statutory innocent owner defense did not violate the Due Process Clause of the United States Constitution where a person had the ability to challenge the trial court's "remedial discretion." *Bennis,* 516 U.S. at 444–45, 116 S.Ct. 994. The lack of a statutory innocent owner defense without any opportunity to be heard before the deprivation of one's property interests, however, may still violate the Due Process Clause. *Id.* The plaintiffs have sufficiently pled that they may not defend their own constitutionally protected property interest before it is eliminated. Therefore, the Court maintains that at this motion to dismiss stage, without more guidance from the parties, the plaintiffs have sufficiently pled facts to show that they have been deprived of constitutionally adequate process, and the Court **DENIES** defendants' motion to reconsider its arguments regarding Due Process.

### 3. Plaintiffs' Motion Implicated Rule 60(b)

The plaintiffs fail to state whether they are bringing their motion pursuant to Rule 59(e) or Rule 60(b). (Docket No. 84 at p. 2.) Like the defendants, the plaintiffs simply state that motions for reconsideration "are generally considered under" Rule 59(e) or Rule 60(b). (Docket No. 84 at p. 2.) The Court issued its Opinion and Order, (Docket No. 78), on February 23, 2012, and plaintiffs filed their motion for reconsideration, (Docket No. 84), on March 27, 2012. Therefore, they failed to file their motion within the twenty-eight day time period provided by Rule 59. Fed. R.Civ.P. 59(e). Because the plaintiffs failed to file their motion for reconsideration timely pursuant to Rule 59(e), Rule 60(b) is implicated for the analysis. *See id.; see also* Fed.R.Civ.P. 60(b). The Court will now address plaintiffs' arguments for reconsideration.

### 4. Plaintiffs' Arguments for Reconsideration

Plaintiffs argue that the Court erred in its dismissal of their claim under the Takings Clause of the United States Constitution. (Docket No. 84 at p. 2.) They do not dispute that "the State is entitled to forfeit a vehicle that has been used in the commission of a crime" but they do contend that the cases cited by the Court it its February 23, 2012 Opinion and Order, (Docket No. 78), "present different facts and controversies from those presented in the instant case." (Docket No. 84 at p. 3.) Plaintiffs also state that they did not raise any substantive due process claim because "the Takings Clause provides a more specifically applicable constitutional framework than the doctrine of substantive due process" but that they will have to raise arguments as a substantive due process violation if the Court does not allow them

to state a claim under the Takings Clause. *Id.* at p. 9. The Court will address each argument in turn.

### a. Takings Clause

With regard to the Takings Clause, plaintiffs argue that their case is distinguishable from the cases cited by the Court. Specifically, the plaintiffs contend that, unlike in the cases cited by the Court, the plaintiffs here have a "prior, legally recognized and perfected lien on the seized property" and that the government extinguishes these liens with forfeiture. *Id.* at p. 3. This extinguishing of their lien, the plaintiffs argue, violates the Takings Clause. *Id.* In short, the plaintiffs contend that the government "can only legally obtain an ownership interest equivalent to that which belongs to the owner at the time of the seizure." *Id.* at p. 5. Therefore, the defendants are only able to seize the vehicle subject to the lien. *Id.* at p. 5. Otherwise, the government would be able to convert the plaintiffs' secured interest to an unsecured one. *Id.* at p. 6. The Court agrees with the plaintiffs but still finds that their claim under the Takings Clause is not ripe.

The doctrine of ripeness comes from the Constitution's Article III requirement that federal courts may hear only cases and controversies, and from prudential reasons for refusing to exercise jurisdiction. *Reno v. Catholic Social Services, Inc.,* 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993). The Supreme Court has held that a court must apply a two-part ripeness test when analyzing a takings claim. *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *see also Pascoag Reservoir & Dam, LLC v. Rhode Island,* 337 F.3d 87, 91 (1st Cir.2003) (discussing the *Williamson* prerequisites that a federal court must find before it can engage in a Takings

claim analysis). First, a takings claim is not ripe "until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 186, 105 S.Ct. 3108. Next, a plaintiff stating a takings claim must have sought "compensation through the procedures" provided for by the State. *Id.* at 194, 105 S.Ct. 3108. The *Williamson* Court emphasized that "[i]f the [state] government has provided an adequate process for obtaining compensation," and a claimant receives just compensation through that process, then the property does not have a claim against the government for a taking. *Id.*

In this case, plaintiff clearly fails to satisfy the second prerequisite: the requirement that it seek compensation via state procedures for the alleged taking, regardless of whether the plaintiffs have shown the first prerequisite of the *Williamson* test. The defendants have shown that Article II, section 9 of Puerto Rico's Constitution prohibits the taking of property without just compensation. (Docket No. 48 at p. 14.) Plaintiffs have not shown that they have sought compensation via state procedures or remedies and have been denied just compensation. Thus, plaintiffs' claims under the Takings Clause are unripe.

Therefore, the Court still dismisses the plaintiffs' claims pursuant to the Takings Clause. The Court will dismiss the claim, however, without prejudice as opposed to with prejudice, as it did in its February 23, 2012 Opinion and Order. (Docket No. 78 at p. 39.) Plaintiffs' motion to reconsider, (Docket No. 84), is **DENIED IN PART.**

### b. Substantive Due Process

Plaintiffs argues in a footnote on the last page of their motion to reconsider that they did not raise any substantive due process claims because "the Takings

Clause provides a more specifically applicable constitutional framework than the doctrine of substantive due process." They then argue that "if the Court will not allow Plaintiffs' claims under the Takings clause," then "they would have to raise the argument as a substantive due process violation." *Id.* at p. 9. Plaintiff do not raise these claims in their original complaint and in fact, they state in their opposition to defendants' motion to dismiss that "plaintiffs' complaint is based on lack of procedural due process only." (Docket No. 52 at p. 8.) Plaintiffs have not attempted to develop their arguments regarding substantive due process and, therefore, the issues are waived. *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

## IV. CONCLUSION

For the reasons expressed, the Court **DENIES** defendants' motion to reconsider, (Docket No. 79), and **DENIES IN PART** plaintiffs' motion to reconsider (Docket No. 84). The motion to dismiss remains **DENIED** as to plaintiffs' claims for lack of standing and plaintiffs' claims under the Due Process Clause. Plaintiffs' due process claims remain active. The motion to dismiss remains **GRANTED** as to plaintiffs' claims under the Takings Clause, which are now **DISMISSED WITHOUT PREJUDICE.**

**An evidentiary hearing will be held on July 19, 2012 at 9:00 a.m. concerning the remaining issues in the case,** including (1) the claims that interested parties (other than owners) have made during forfeiture proceedings pursuant to the 1988 Asset Forfeiture Law and Law 119; (2) if an innocent owner's defense does not exist in Puerto Rico, the claims that interested parties (other than owners) make during a forfeiture hearing to obtain possession of the vehicle; (3) when a vehicle is sold through a forfeiture proceeding, whether the vehicle is sold free and clear of a lienholder's lien.

**IT IS SO ORDERED.**